Snapp v. The Commonwealth.

CASE 29—INDICTMENT—JUNE 14, 1884.

# Snapp v. The Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Ferguson was back tax collector for the city of Louisville. Appellant. was his clerk and cashier upon his employment. *Held:*
2. That whatever moneys came into the hands of the principal or his clerk in the discharge of their duties, came lawfully into the hands of both, and having the right to receive the money, appellant can not. be held to have committed a felony.
3. Where one comes into possession of money or property lawfully, he can not become guilty of larceny by afterwards converting it to his own use.
4. Appellant was not an officer of the city of Louisville; he was Ferguson's clerk, and bound to account to him alone.
5. Although where several felonies are parts of the same transaction, evidence of all is admissible on the trial of an indictment for one; yet the rule does not apply to a case like this, where a charge of larceny alleged to have been committed on one day is attempted to be established by proof of another larceny committed on a different day.
6. Evidence of appellant's extravagant habits; or of expenditures beyond his salary, is incompetent.

YOUNG & TRABUE, P. B. MUIR, AND HENRY CLAY FOR APPELLANT.

No brief.

W. HARDIN, ATTORNEY GENERAL, AND A. G. CARUTH, COMMONWEALTH'S ATTORNEY, FOR APPELLEE.

No brief.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT:

The grand jury at the April term, 1883, of the Jefferson circuit court, returned an indictment against the appellant, Cope J. Snapp, containing two counts; one. for embezzlement and the other for grand larceny. He was convicted of grand larceny and has appealed to this court.

It was alleged in the one count that while acting as clerk for one David Ferguson, back tax collector of the city of Louisville, he had embezzled $342.87 cents of money belonging to the city, and in the other that he had feloniously taken and converted to his own use, the same amount and the same sum of money, and was, therefore, guilty of grand larceny. The money said to have been the subject of the larceny was paid to the appellant by Clemerson in a check on one of the Louisville banks in discharge of taxes due by one Newman. The prosecution and the defense both establish the fact that Ferguson was the back tax collector for the city from the month of April, 1881, to December, 1882, and it is a fact conceded, that during that period he was a defaulter to the city on account of moneys collected in a sum largely exceeding fifty thousand dollars. He was indicted for embezzlement, tried, and convicted of the offense, and finally released from prison by executive interference.

The appellant, Snapp, was the chief clerk and cashier of Ferguson, and from the testimony seems to have had almost the entire control of the office and the moneys collected. Ferguson received for his services a commission on the amount collected, and employed Snapp (the accused) as his private clerk out of his own means, paying him for his services seventy-five dollars per month. Under the law defining his duties as back tax collector, Ferguson was required to settle his accounts with the city treasurer and pay over the money collected by him at the end of each week, but this he neglected to do, and settled once in two or three weeks.

The reports of the treasurer evidencing the amount

of money collected by him were usually, perhaps, always made out in the handwriting of the accused and signed by Ferguson.

There was in the office of Ferguson two books, called the ledger and cash book. In the one was inserted the names of those owing back taxes and the amount; also the amount paid by them, and in the other was the amount of cash received at various times from those paying it.

When money was paid tickets were made and placed with the cash in the cash drawer, and the money usually taken from the drawer and deposited in some one of the banks to Ferguson's credit. The safe in which the books were kept, and sometimes the money, as well as the office, was furnished by the city.

The appellant seems to have made the deposits generally, and the money, when required by Ferguson, was checked out on his order to be paid either to the city treasurer or those entitled.

Ferguson was at the Hot Springs from May 20, 1882, until the 10th of June of the same year, and during his absence it appears that one Newman was indebted to the city for taxes on his property for the years 1878, 1879, 1880, and 1881; for the two last years the money was going to the tax receiver of the city and not to the back tax collector. The entire amount of taxes due was paid by one Clemerson, in a single check, and this check delivered to the appellant, Snapp, who indorsed it and then delivered it to the clerk of the tax receiver. The bank where it was payable, cashed the check, and the tax receiver, or his clerk, retained the amount due him, and paid the balance to the appellant—that

balance, $342.88, belonging to the back tax collector's office. All of this sum Snapp is proven to have accounted for except $169.45, the amount of Newman's taxes for the year 1879. This sum was not entered on the cash book or accounted for by Ferguson in his settlement with the city treasurer after his return home, nor has the city, so far as this record shows, ever received it.

The same day Snapp received this money ($342.88), he deposited in bank to Furguson's credit $550, and claims to have accounted to Ferguson for all the money received by him.

There was a plea of not guilty entered, and the burden was on the Commonwealth to show a felonious taking of this money and its conversion by the accused before he could be convicted of larceny.

The failure of either to account to the city for the money did not make either guilty of larceny. Ferguson's duty was to account to the city treasurer, and Snapp's duty was to account to his principal, Ferguson, and while the failure to account showed the one or the other, or both, to have been in default, still it made neither guilty of a felonious taking of the money belonging to the city.

The prosecution was permitted to prove in order to a conviction, that during the absence of Ferguson in the South, there had been paid into the office of the back tax collector at various times (the accused being in charge of it), the sum of six thousand dollars, and that nearly two thousand dollars of that sum had never reached the city treasury or been accounted for by Ferguson.

The appellant objected to the introduction of this testimony, and his objections were overruled, to which an exception was entered.

The prosecution, after issue formed between the accused and the State, undertook to convict the appellant of larceny in taking the $342, amount paid him of Clemerson's check in discharge of Newman's tax bill, and the testimony was directed to that specific charge. The issue was then distinctly made, and it devolved on the Commonwealth to show *an unlawful taking of this money from the city by the accused with a felonious intent.* Snapp was not an officer of the city, and was under no obligation to account to the city treasurer, nor would the latter have recognized him as the party with whom he was to make these weekly settlements.

It was Snapp's duty to account to Ferguson and to no one else. The Commonwealth had traced the money into the hands of the accused, who had the right to collect it and to pay it over under Ferguson's order. The money was properly paid over to him, and he alone, during Ferguson's absence, had the right to its custody. A conviction could not be had under the indictment for larceny unless the jury believed from the testimony that the accused had taken this particular money, or a part of it, *from the city of Louisville* with the felonious intent of depriving the city of its use. The money had been received without fraud, and as a matter of right, and in such a case, although he may have the *animus furandi* afterwards and convert it to his own use, he is not guilty of larceny.

There is no testimony in this case showing any felonious taking after the money had been lawfully

received by the accused, unless the jury may infer a subsequent felonious taking from the previous conduct and history of the accused. The presumption in favor of the accused is: That he accounted to Ferguson for this money, and this presumption of innocence continues until facts establishing guilt appear, and when a failure to account is shown it does not constitute the crime of larceny. If this money had been deposited with the city treasurer and then abstracted by the accused, he would be guilty of larceny, or if paid over to Ferguson and by him deposited in his safe in his office, or by the appellant as his clerk, and the latter had then taken it with a felonious intent, he would be guilty of the offense of larceny from Ferguson, but not from the city.

Neither state of case is presented by the facts of this record, and the jury were permitted to infer the commission of the offense from testimony introduced by the prosecution, showing that other sums of money had been unaccounted for by Ferguson that had been collected by Snapp in Ferguson's absence, and although the accused came into the possession of the money lawfully, there was a subsequent felonious taking that constituted the offense of larceny. The *corpus delicti* had not been established, but the jury were in effect told, or were permitted by the introduction of this testimony to convict the accused of the larceny of $169, not because the offense had been proven, but for the reason that during the period of two months his principal (not the accused) had failed to account to the city of Louisville for near two thousand dollars.

Where several felonies are parts of the same transac-

tion, evidence of all is admissible on the trial of an indictment for any of them. Russell on Crimes, volume 3, page 283

This rule, however, does not apply to a case like this, where a charge of larceny alleged to have been committed on one day is attempted to be established by proof of another larceny committed on a different day, although from the same party and under the same employment. Three indictments were pending against the same party for setting fire to three ricks belonging to three different persons. It appears that the ricks were in sight of each other, and were set on fire the one after the other, it was held that the whole was one continued offense. Or, in an indictment for arson, containing five counts for setting fire to five different houses which were all in one row, and the fire from the one communicated to all the others, it was held to be one offense. In this case testimony has been introduced of independent and distinct offenses or appropriations of money for the purpose of showing that a lawful possession has become tortious. Such a ruling can not be sustained upon principle or by authority. "The facts proven must be strictly relevant (says Russell) to the particular charge, and have no reference to any conduct of the prisoner unconnected with the charge." For this reason, the general character of the accused—his disposition to commit crime can not be introduced by the prosecution for the purposes of conviction, and if not, we see no reason why on a trial for larceny, where the felonious taking is denied, the fact may be established by proof that the accused committed another larceny about the same time, or a

series of such offenses similar in their character. When it becomes necessary to show guilty knowledge, or the intent with which the act was done, such evidence is admissible.

In an indictment for murder, former threats between the parties may be shown to establish malice, or where one is charged with making a fraudulent entry, the fact of the entry alone is not sufficient evidence of fraud, and, therefore, the intent must be shown by the Commonwealth, and it is competent to show other false entries with a view of showing the intent with which the false entry was made. One is charged with passing a counterfeit bill, knowing it to be counterfeit, the *scienter* may be established by showing the passing of similar bills, and his knowledge that they were counterfeit. So, in an indictment for poisoning, proof may be introduced showing that the accused knew it was poison, and its effect, by having administered the same drug to others.

An attempt to obtain money under false pretenses by pledging worthless property as valuable, representing that a brass ring is gold, the fact of attempting to pass and disposing of such spurious jewelry to others may be shown to establish the intent or knowledge of the party. "It may be laid down as a general principle, says the learned judge below, supported by reason and authority, that when there is a question whether an act was accidental or intentional, the fact that such act formed a part of similar occurrences in each of which the person doing the act was concerned, is deemed relevant." Such evidence is admitted for the reason that the intent or *scienter* can not be established with-

out it, but the rule has never been carried so far as to admit evidence against the accused of an independent larceny, although of the same character, for the purpose of convicting the party of the larceny for which he is being tried. Besides, what does this evidence establish if competent. It shows that Ferguson failed to account to the city for various sums of money while Snapp was his clerk, and some of it, or all of it, collected by Snapp when Ferguson was absent. This is no evidence of a felonious taking by Snapp when the only evidence introduced against him establishing the *corpus* is, that he received the money lawfully. It may be, and is evidence, conducing to show that one or the other (Ferguson or Snapp), appropriated the money to their own use, but it is not evidence of a subsequent felonious taking of $342 that makes Snapp guilty of larceny. The *corpus delicti* in this case was not established by the proof that he obtained the money lawfully, because having obtained it rightfully if he had expended it the next moment, he is not guilty of larceny.

It is no case for proof as to the unlawful intent—for when established, conceding that he appropriated it to his own use, he is civilly and not criminally responsible.

This proof has gone to the jury not only to show that he intended to dispose of it for his own use when he received it, but to show, in addition, a subsequent felonious taking.

In an indictment for stealing pork, a bowl, some knives, and a loaf of bread, it appeared that the accused entered a shop and ran away with the pork,

and in a few minutes returned and placed the pork in a, bowl which contained the knives, and took away the whole together, and in half an hour returned and took the bread, it was held that taking the bread was a distinct offense, and could not be given in evidence under the indictment. "Generally speaking, it is not competent to a prosecutor to prove a man guilty of one felony by proving him guilty of another unconnected felony, but where several felonies are connected together and form part of the entire transaction, the one is evidence to show the character of the other." Russell on Crimes, page 280.

In this case the failure of Ferguson to account for the moneys paid to Snapp at various times while he was absent, although not shown to be larceny by Snapp or Ferguson, is permitted to go to the jury to establish that a failure to account in a single instance does constitute larceny, or is a fact from which the jury may infer the commission of the particular crime.

In the case of the State v. Goety and Martin, 34 Mo., the defendants were indicted for larceny of jewelry from the store of Jaccard in St. Louis. The defense was that the property was taken by their children unknown to them, and that they were of good character.

The State then introduced evidence that on the same day and about the same hour the defendants had stolen articles from the stores of others in the vicinity of Jaccard's store. The evidence was held incompetent, the court saying: "We have been unable to find any reported case in which, upon a trial for larceny, evidence of another and distinct larceny was admitted to establish the one charged in the indictment."

If there was a taking of this money from the city without right or authority, no evidence on the part of the Commonwealth of the intent was necessary. If the accused took from the possession of the city, or Ferguson, the money of either and appropriated it to his own use, the law will imply the intent. If he did what is charged, the criminal intent necessary to constitute the offense accompanied the act

Such an act would be neither innocent or lawful, but unlawful, and the burden would rest on the accused to excuse himself from the criminal intent that necessarily arises from the commission of such an act. Lord Mansfield says: "When an act in itself indifferent, becomes criminal if done with a particular intent, then the intent must be proved and found, but when the act is unlawful the proof of justification or excuse lies with the defendant, and in case of failure, then the law implies criminal intent."

The testimony objected to being incompetent, the objections should have been sustained.

It further appears from the indictment and the testimony in support of it, that this alleged larceny was committed on the 8th of June, 1882, and the prosecution was permitted to prove that before the larceny is alleged to have been committed the accused was of extravagant habits.

His mode of living; the expenditure of a much larger sum of money each month or year than his monthly or yearly salary, all facts transpiring before the commission of the offense. All this was allowed to show the inducement for the wrongful appropriation of the money. This was clearly incompetent. His habits and

mode of life prior to the 8th of June, 1882, had no connection with the commission of the offense with which he stood charged. Such evidence would doubtless be competent in a case where a party indicted for robbery from the person, or larceny of money or goods, to prove that immediately after the offense the party accused, prior to that time being without money, had in his possession shortly after large sums of money, and was using it lavishly on himself or family. Such a link in the chain of circumstances might be properly introduced, but his extravagant habits prior to the time of the commission of the offense, it seems to us, can not be admitted under any recognized rule of evidence, and therefore the court erred in permitting it to go to the jury.

After the testimony had been heard on both sides, counsel for the appellant asked the court to say to the jury that if the accused had accounted to Ferguson for the money, they should acquit him. If a conviction could have been had on the theory of the prosecution, this instruction, in a modified form, should have been given.

The accused was under no obligation to account to the city, but was compelled to account to Ferguson; if, therefore, he, in good faith, accounted to Ferguson, he was entitled to an acquittal.

There was proof conducing to show that he had accounted for all the money collected by him during Ferguson's absence but five or six hundred dollars, and the jury might well have concluded that in making the account he had included the amount collected of Newman.

While Ferguson was collecting this money as a public officer, for the use of the city, the city was not entitled to the identical money. He had the right to deposit it wherever he saw proper, or to retain it in his own custody, and all the city had the right to demand of Ferguson was to pay over the amount collected by him, and Ferguson had the right to exact an account from his clerk, and it was his duty to make it and to pay to Ferguson the money he, as clerk, had collected.

If the money had been taken from the drawer in Ferguson's office, or the safe, it was a theft from Ferguson, and the latter was liable to the city on his bond for the loss.

This was not the final depository of the city's money kept by its agent or treasurer in the vaults of the city, and who is responsible only for that diligence that a prudent and careful custodian of the money should exercise, and if the burglar should enter and take the money the city must bear the loss, and not the treasurer when not lost by his neglect. Ferguson was only a tax collector, and no distinction exists between him in this regard, and the sheriff or his deputy who collects the county levy and the State revenue. It will not be argued that a sheriff may be indicted for larceny from the State or county, when he fails to account for the revenue collected by him, and when collected, if stolen from his possession or from the safe in his office, whether furnished or not by the county or State, he is liable for the loss. The thief steals from the sheriff and not from the State or county, and even if the accused was guilty of larceny, it was a taking from Ferguson and not from the city. Ferguson could not

be guilty of larceny by taking the money and having the right to its custody, an accounting to him by the accused, entitled the latter to an acquittal. Under 24 and 25 Victoria, it was provided: "Whoever being the bailee of any chattel, money, or valuable security shall fraudulently convert the same to his own use shall be guilty of larceny."

Under the statute the prisoner was indicted charged as bailee with stealing the money in his custody belonging to a society. Mills, Justice, said: "The prisoner is charged with larceny as bailee, but he was the acting treasurer, and as such it was his duty to deposit or invest the money received, and he was not required to pay over the specific coin that came to his hands, which is essential to a bailment. 2 Russell on Crimes, page 247. This case is cited to show that Ferguson was not a mere bailee, and required to pay over the identical money received by him from the tax payer, and therefore a felonious taking of the money from him or his office is a theft from Ferguson.

In this State we find various statutes enacted with reference to officers of corporations who are entrusted with the custody of funds of the corporation, making them criminally liable for disposing of such funds for their own use. Also enactments making any one guilty of embezzlement who fraudulently misapplies funds belonging to or for the use of the State. Whether the case of a tax collector comes within any of the provisions of these statutes is not necessary to be determined, but it is manifest they were enacted so as to punish those who otherwise, under the rule of the common law, would only be guilty of a breach of trust.

in using such moneys when under their custody and control.

The jury were the triers of the fact as to the guilt of the accused, but having returned a verdict based on incompetent testimony, it is the duty of this court to reverse the judgment of conviction.

The accused has been convicted of larceny when the money alleged to have been wrongfully appropriated came rightfully into his possession, and when the evidence is excluded that has no relevancy to the issue made, there is no case of larceny against him.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.