CASE 30.—PROSECUTION AGAINST ˙ P. H. MORSE FOR
EMBEZZLEMENT.—June 17.

# Morse v. Commonwealth

Appeal from Kenton Circuit Court.

W. McD. SHAW, Circuit Judge.

Defendant convicted and appeals—Affirmed.

1.  Criminal Law—Evidence—Identity of Accused—Admissibility.
    —In a prosecution for embezzling money collected by de-
    fendant under an assumed name as sales agent for a brewery,
    where defendant denied that he had collected the money and
    attempted to show that it was collected by another, evidence
    that defendant sold liquor under an assumed name, as agent
    for the brewery, and collected a part of the price, and of
    other transactions in which defendant had assumed the same
    or a similar name, as well as evidence identifying him as the
    person who cashed the checks received for the liquor, was
    admissible to show defendant's identity.

2.  Same—Other  Offenses—Purpose—Identity of Accused.—Evi-
    dence that defendant had been previously indicted under the
    alleged assumed name, for another crime, was also admissible
    to show his identity and as tending to show that he had
    collected the money under the alleged assumed name.

3.  Same—Trial—Reception of Evidence—Grounds Assigned by
    Trial Court—Erroneous Grounds—Effect.—In a prosecution
    for embezzlement, evidence that accused had collected money
    under an assumed name, and of other transactions in which
    he had assumed the same name, being admissible to establish
    his identity, the fact that it was admitted by the trial court
    to show a criminal intent was immaterial, where the erron-
    eous ground of admission assigned did not prejudice accused.

4.  Same—Reception of Evidence—Restriction to Special Purpose
    —Identity of Accused—Sufficiency of Instructions.—While, in
    a prosecution for a crime  committed under an assumed
    name, the defense being that the crime was committed by

Morse v. Commonwealth.

another, the state's evidence may take a wide range and show that he committed the offense charged as well as other offenses under the same name, to establish his identity, the jury's consideration of such evidence should be limited to that purpose, and in a prosecution for embezzling money under an assumed name, an instruction that evidence that defendant had also received money from others under the same name, and had committed another offense under the same name, could not be considered as evidence of guilt of the embezzlement charged, was equivalent to instructing that it could only be considered to establish the identity of accused.

5. Embezzlement —Elements—Intent—Necessity of Proving.— Under an indictment under Ky. St. 1903, sec. 1202, providing that any agent, etc., of any corporation who shall embezzle or fraudulently convert to his own use, or the use of another, money belonging to such corporation and in his possession as such agent, etc., shall be confined in the penitentiary, etc., the Commonwealth must show that accused was the agent of a corporation and in the course of his employment received money or property belonging to it, and that he embezzled or fraudulently converted to his own use the money, etc., and, in an embezzlement prosecution, if accused, an agent for a distilling company, a corporation, in the course of his employment, received money and failed to pay it over, the crime of embezzlement was complete, and it was unnecessary to introduce evidence showing the criminal intent, since that would be presumed from the other facts shown.

6. Criminal Law—Evidence—Other Offenses—Admissibility.— Under the circumstances, evidence of other and distinct embezzlements and other offenses committed by accused was not admissible for the purpose of showing a criminal intent.

7. Embezzlement—Elements—Intent—Necessity of Proving.— It is not essential that the Commonwealth introduce evidence to show a guilty intent to secure a conviction for embezzlement, as an evil intent is necessarily involved in the commission of embezzlement, as well as most felonies, and the law will imply the intent from the acts of accused when they are sufficient to establish his guilt, on the ground that every person is responsible for the consequence of his acts.

8. Criminal Law—Evidence—Other Offenses—Admissibility — General Rule.—As a general rule, in criminal cases the Commonwealth cannot show that accused has committed other distinct crimes than the one charged.

9.  Same—Connected Acts—Admissibility.—If several similar criminal acts committed by accused are so connected in time, locality, etc., that they form an inseparable transaction, and the offense charged cannot be fully shown without giving the particulars of the other offenses, evidence of any or all of the connected acts is admissible to prove the general plan.

10. Same—Intent and Knowledge.—Where a crime charged is admitted by accused, who seeks to avoid responsibility by showing a lack of intent or guilty knowledge, evidence that he has committed similar independent offenses before or after that charged, which have no apparent connection therewith, is admissible to prove such intent and knowledge.

11. Same—Auxiliary Offenses.—If the circumstances tend to show that accused has committed an independent, dissimilar crime to enable him to commit or conceal the offense charged, evidence of the independent crime is admissible, when the intent to commit or conceal the independent offense was the motive of the offense charged.

12. Same—Acts Showing System or Habit.—Where a crime is committed by the use of novel means, or in a particular manner, evidence that accused has committed similar offenses in the same manner is admissible to prove the identity of persons from the similarity of the means adopted in committing the crimes.

13. Same—Guilty Knowledge.—In an embezzlement prosecution, where the defense is want of intent, or that the criminal act was the result of an accident, mistake, or oversight, evidence of other embezzlements is admissible to show guilty knowledge in the commission of the act charged.

14. Same—Order of Proof.—In criminal prosecutions, evidence of the commission of offenses other than those charged, when admissible, may be. introduced whenever the nature of the defense is disclosed that will permit it, and if in the opening it appears that accused will rely on lack of intent or of guilty knowledge, the Commonwealth may introduce such evidence in chief; but if the nature of the defense is not disclosed until the evidence of accused is offered, such evidence may be in rebuttal, which is the better practice.

15. Embezzlement—Evidence—Identity of Accused—Admissibility.—In a prosecution for embezzzling money wrongfully collected from Staggenburg, while acting as the agent of a corporation, if accused denied that he was acting as agent for the corporation, the fact might be proved by other wit-

Morse v. Commonwealth.

nesses than Staggenburg that he had represented himself to them as its agent.

16. Same—Embezzlement from Corporation—Corporate Existence—Manner of Proving.—In a prosecution under Ky. Stats. 1903, section 1202, providing that if any agent, etc., of a corporation shall embezzle money belonging to such corporation, etc., which is in his possession as such agent, he shall be guilty of a felony, sufficient evidence of the fact of incorporation is essential; but this may be shown by parol evidence and general reputation that the concern is a corporation de facto, doing business as such.

17. Same—Necessity.—Under Ky. Stats. 1903, section 1202, making it a felony for any officer, agent, etc., of any bank or corporation to embezzle money in his possession belonging to such bank or corporation, in a prosecution for embezzling money or property of a bank, insurance company, or railroad doing business in this state, it is unnecessary to show the fact of incorporation, since, by statute, these concerns cannot do business without being incorporated; but in prosecutions for embezzlement from concerns that may do business either as corporations, individuals, etc., the fact of incorporation must be shown.

18. Criminal Law—Evidence—Opinion Evidence—Comparison of Handwriting—Standard of Comparison.—In an embezzlement prosecution, where accused endeavored to show that money was collected by another, evidence that the handwriting of a letter claimed to have been written by such other was similar to that of receipts shown to have been given by accused was properly refused, where the genuineness of the alleged handwriting of such other person was not admitted or established, as required by the statutes following Civil Code Prac., section 604, relating to proving a writing by witnesses.

19. Embezzlement—Ownership of Property.—In an embezzlement prosecution, where accused was employed to sell liquor and collect only a certain percentage of the purchase price as his salary, but was not authorized to collect the remainder, the fact that accused had a right to collect a part of the amount retained by him did not prevent the collection and retention of more than he had a right to collect from constituting embezzlement.

20. Same—Capacity in Which Property is Received.—Where accused was employed to sell liquor and collect only a part of the purchase price as his salary, in a prosecution for embezzlement for collecting more than he was authorized to

collect, the fact that accused had no authority as agent to collect the money embezzled did not prevent his collection thereof from being an embezzlement, as he was enabled to collect the additional money by representing himself as agent, and he cannot set up as a defense that he was not authorized to collect it.

21.  Same—Indictment—Value of Property—Proof and Variance. —Though an indictment for embezzzlement charged the taking of a certain sum, a conviction may be had on proof of the embezzlement of a less sum.

B. F. GRAZIANA for appellant.

## AUTHORITIES CITED.

1. A peremptory instruction should have been given. (Roberson on Ky. Crim. Law, vol. 1, sec. 445, p. 642; Amer. & Eng. Ency. of Law, vol. 6, pp. 465, 473 and 474; Russell on Crimes, vol. 2, sec. 188; Stone v. Commonwealth, 104 Ky., 220.)

2. The court erroneously permitted incompetent testimony. (Russell on Crimes, vol. 3, sections 300, 294 and 288; Snapp v. Commonwealth, 83 Ky., 179.)

3. The court erred in refusing to give instructions offered. (Commonwealth v. Hicks, 4 Ky. Law Rep., 619; Stone v. Commonwealth, 20 Ky. Law Rep., 478.)

JAMES BREATHITT, Attorney General, and T. B. McGREGOR, Assistant Attorney General, for Commonwealth.

We submit: That where an agent converts money to his own use collected by him as such, the fact that he was entitled to a commission on the sum so collected, if such collecting was not an independent business, will not protect him from prosecution for embezzlement.

## AUTHORITIES CITED.

Kentucky Statutes, sec. 1202; Robinson's Crim. Law, sec. 456; Stone v. Commonwealth, 104 Ky., 220; Robinson's Crim. Law, sec. 457; Clark v. Commonwealth, 97 Ky., 76; 4 Elliott on Evidence, sec. 2720; 62 L. R. A., 193 and notes; People v. Seaman, 61 Am. St. Rep., 326; O'Bryan v. Commonwealth, 89 Ky., 362; 24 Ky. Law Rep., 2511; Bess v. Commonwealth, 25 Ky. Law Rep., 1019; People v. Stout, 4 Park Crim., 127; 1 Wigmore on Evidence, sec. 304; 1 Jones on Evidence, sec. 144.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant was indicted under section 1202 of the Kentucky Statutes of 1903, providing in part that: "If any officer, agent, clerk or servant of any bank or corporation shall embezzle or fraudulently convert to his own use or the use of another, money * * * belonging to such bank or corporation * * * which shall have come into his possession * * * as such officer, agent, clerk or servant, * * * he shall be confined in the penitentiary for not less than one nor more than ten years." The indictment charged that appellant, who was indicted as Homer Marion, alias Homer Morris, alias P. Homer Morse, while acting as the agent of the Consumers' Distilling Company, a corporation under the laws of Kentucky, had by virtue of his agency collected and received $59.95 from Henry Staggenburg for whisky sold and to be delivered, and did unlawfully, fraudulently, and without the consent of the Consumers' Distilling Company embezzle and convert to his own use the said sum of money, with the fraudulent and felonious intent then and there to convert the same to his own use, and to permanently deprive the company of its property therein. Upon a trial under this indictment, he was convicted, and his punishment fixed at two years' confinement in the State penitentiary. We are asked to reverse the judgment of conviction chiefly because the court erred in the admission and rejection of evidence and also for error in the instructions given to the jury.

A brief statement of the facts will aid in understanding the force of the objections raised. The

Consumers' Distilling Company is a Kentucky corporation, with its principal place of business located at Louisville. It was engaged in the manufacture of whisky and the sale of it direct to the saloon trade. The whisky sold was in bonded warehouses. Its sales were made by agents who delivered to purchasers warehouse certificates for the amount of whisky they desired to buy. These warehouse receipts specified the serial numbers of the barrels of whisky the purchaser bought, which was deliverable to bearer upon the payment of the purchase price, tax, and other charges. Appellant was employed by the company to solicit trade and was furnished a supply of blank warehouse receipts and sale order blanks. He was not personally known to the company, but was employed by it upon the recommendation of his cousin, Bradford Morse, who had been acting as its agent in the territory assigned to the appellant after Bradford Morse quit its employment. These agents were not authorized to collect money on sales made, but were authorized to receive from the purchaser their commission upon sales, which was 5 per cent. Appellant made sales to H. P. Murphy and H. C. Davis, and from these persons he collected more than his commissions, but remitted to the company the amount collected from them less commissions. He did not remit any money collected from other persons, or send in any other orders, or notify the company of any other sales.

Henry Staggenburg testified that he was a saloon keeper in Covington, and that on July 22, 1907, a man named Homer Marion came to his place of business with samples of whisky, order blanks, and certificates, and that he bought from him three five-barrel certificates, for which he paid him at the time $29.95.

and in about a week afterwards $30 more. He identified the appellant, Morse, as being the person who sold him the whisky under the name of Homer Marion, and also produced the receipts signed by Homer Marion. The warehouse receipts delivered by Homer Marion, alias P. H. Morse, recited, in substance, that the Consumers' Distilling Company had sold to Staggenburg 15 barrels of whisky in a bonded warehouse, naming it, which it agreed to deliver to him on the payment of the United States government tax, and other taxes and storage, and the price at which the whisky was sold. The total amount of the purchase was $126.65. Upon the trial, persons by the name of Hennessey, Dennis, Sidler, and Schutte were introduced as witnesses for the Commonwealth. Each of them was permitted to state, over the objection of appellant, that while representing himself to be Homer Marion, and an agent for the Consumers' Distilling Company, appellant sold to them warehouse receipts for whisky in bond and collected from each of them a part of the purchase price. They positively identified the accused as the person who sold them the whisky and collected from them the money under the name of Homer Marion, and were permitted to relate all the details of the transaction each of them had with him. The treasurer of the Central Savings Bank & Trust Company also identified the accused as representing himself to be Homer Marion when he cashed the checks given to him by Staggenburg. Other witnesses were introduced who identified the appellant as having tranactions with them under the name of Homer Morris, and yet others who knew him when he was going under the name of E. B. Morse. The president of the company testified that he employed the accused upon the recommendation of his cousin,

Bradford Morse, to act as agent in his place during his absence from the State; that he had never seen the accused until after his arrest; that agents of the company were not authorized to collect from persons to whom whisky was sold any part of the purchase price except their commissions; and that no report was made to the company by the accused of whisky sold to Staggen-burg, Hennessy, Dennis, Sidler, or Schutte, nor did he remit to it any money on account of sales to these parties.

The appellant, when introduced as a witness in his own behalf, testified that he had acted as agent for the Consumers' Distilling Company for a short while, and during the time had sold whisky to Murphy and Davis, but had not sold or attempted to sell any whisky to either Staggenburg, Hennessy, Dennis, Sid-ler, or Schutte; nor had he collected from them any money. He attempted in the course of his examina-tion to place these transactions upon Bradford Morse, and denied that he ever assumed the name of Homer Marion, or Homer Morris, but admitted that at one time he had assumed the name of E. B. Morse. Over his objection, the Commonwealth was permitted to ask him if he had not been indicted and convicted in the federal court as E. B. Morse for a fraudulent use of the mails. He was also required to state that as E. B. Morse he had rented property some years before the trial from a man named Rolson, and was also interrogated concerning other incidents in his life that had no bearing upon the offense he was charged with, except to show that at various times he had assumed different names. The defense of appel-lant was rested entirely upon the fact that the crime he was charged with was committed by Bradford

Morse. In other words, that the Commonwealth had instituted the prosecution against the wrong person.

The first question presented is the competency of the evidence of Hennessy, Dennis, Sidler, and Schutte. The trial court admitted the evidence of these persons for the purpose of showing a criminal intent upon the part of the accused, and admonished the jury that this was the only purpose for which their testimony was received. Considering the defense interposed by appellant, we are of the opinion that, although the evidence was competent, the reason for its admission given by the trial judge was erroneous. It was relevant and admissible for the purpose of establishing the identify of the accused, but not, as we will presently show, for the purpose of showing a criminal intent upon his part. The grounds upon which it was admitted are not, however, material. It was competent evidence, and the appellant was not prejudiced by the erroneous reason assigned by the lower court. The accused denied that he had ever assumed the names of Homer Marion, or Homer Morris, and that he had any transactions with Staggenburg. It was therefore competent to prove not only by Staggenburg, but by the other witnesses who about the same time knew him or had similar transactions with him, that in dealing with them he represented himself to be Homer Marion, and to prove by them that appellant was the identical person whom they knew as Homer Marion. This evidence might have been made by as many persons as were able to identify him without reference to whether they had business transactions with him or not. In the examination of these witnesses for the purpose of fully identifying the accused, it was also permissible to allow them to relate the circumstances under which they knew him

and the business transactions they had with him. In addition to this, and as a corroborative and relevant fact tending to show that the accused had assumed the name of Homer Marion, it was competent to prove that he had assumed other names, and that under another name he had been indicted and convicted in the federal court. When the defense of a person is that it was not himself, but another, who committed the crime, the evidence in behalf of the Commonwealth may be permitted to take a wide range for the purpose of developing the past life and history of the accused and the names he has assumed, to the end that he may be identified under those assumed names as the person who committed the offense under investigation; but if, in the course of the evidence brought out in the elucidation of these facts, it should appear that the accused had been guilty of some other offense, the court should at the time admonish the jury that they should not consider evidence of other offenses as even tending to show his guilt of the crime for which he was being tried, but that it was only competent for the purpose of establishing the identity of the accused and to illustrate that at different times he had assumed various names. As the evidence of Hennessy, Dennis, and the others was relevant and competent upon the question of identity, the admonition of the court that the jury could not consider it as evidence that the accused was guilty of embezzling the money secured from Staggenburg had the same effect as if he had in terms directed them that it was only admitted to establish the identity between Homer Marion and P. H. Morse. We might rest the opinion here upon the question of the relevancy of this evidence; but, in view of the importance of the question raised, we will endeavor

to state the reasons why we think the trial judge committed a technical error in the reasons assigned for the competency of the evidence.

Under an indictment for embezzlement, it is necessary that the Commonwealth should prove: (1) That the accused was an officer, agent, clerk, or servant of a bank or corporation; (2) that as such officer, agent, clerk, or servant, and in the course of his employment, he received money or property of the bank or corporation; and (3) that he embezzled or fraudulently converted to his own use the money or property so received. If the accused was the agent of the Consumers' Distilling Company, a corporation, and as such agent, in the course of his employment, or within the scope of his duties, he received or collected from Staggenburg money due the company and failed to pay it over, the crime was complete. It was not necessary to introduce other evidence to show a fraudulent intent upon his part to convert it to his own use. That he so intended might be reasonably inferred from the other facts proved. The case for the Commonwealth was made out by the testimony of Staggenburg and the president of the company, and if no evidence had been introduced for the defense a judgment of conviction might have followed; and under the circumstances it would have been not only unnecessary, but highly prejudicial, to admit evidence of other distinct embezzlements from other persons. But, as the accused denied that he had secured any money from Staggenburg, it was, as we have endeavored to show, competent to admit other evidence to establish his identity although this evidence developed the offenses committed in connection with Hennessy, Dennis, Sidler, and Schutte. The peculiar defense interposed by the accused rendered necessary

vol. 129—20

evidence of his identity, and at the same time made it unnecessary to introduce collateral facts to show intent. The question of intent was not particularly put in issue by the accused. His defense was not grounded upon a lack of intent, and therefore on this point it was only required that the Commonwealth should show the facts directly connected with the Staggenburg transaction. It is not indispensible that the Commonwealth should introduce evidence to show a guilty intent before a conviction can be secured for embezzlement. An evil intent is a necessary ingredient in the commission of arson, burglary, larceny, murder, and almost every other felony, including embezzlement, and must be charged in the indictment; but the law will imply the intent from the acts of the accused when they are sufficient to establish his guilt, and this upon the ground that every accountable person is responsible for the consequences that flow from his acts. Snapp v. Commonwealth, 82 Ky. 173, 6 Ky. Law Rep. 34. Intent, however, often becomes a material factor in determining the guilt of the accused, and when this state of case is presented it is competent to show the guilty intent by relevant evidence connected with or that throws light upon the transaction under investigation. But it is not often that it is permissible, in order to show intent to introduce evidence of other and distinct crimes; and it may be said to be a rule of general application in the trial of criminal cases that the Commonwealth will not be permitted to introduce evidence showing that the accused has committed other and distinct crimes than the one for which he is being tried. The justice of this rule cannot be denied. Evidence of the commission of other offenses is very prejudicial to the accused, has a tendency to

divert the mind of the jury from the case under
consideration, and often may find the accused entirely
unprepared to meet the new issues presented. For
these reasons the practice in this State has been
against the admissibility of evidence of this char-
acter, unless it is necessary to establish identity, or
guilty knowledge, or intent or motive for the crime
under trial, or be so interwoven with it that it cannot
well be separated from it, in the introduction of rele-
vant and competent evidence, or the independent
offense was perpetrated to conceal the crime for
which the accused is on trial.

The exceptions to the general rule against the ad-
missibility of evidence of other and distinct offenses
are in a general way stated as follows in Underhill's
work on Criminal Evidence, at page 107: "(1) If
several similar criminal acts committed by the person
on trial are so connected with respect to time and
locality that they form an inseparable transaction,
and a complete account of the offense charged in the
indictment cannot be given without detailing the par-
ticulars of such other acts, evidence of any or all of
the component parts thereof is admissible to prove
the whole general plan. (2) When the commission
of the act charged in the indictment is practically
admitted by the accused, who seeks to avoid criminal
responsibility therefor by relying on a lack of intent
or want of guilty knowledge, evidence of the commis-
sion by him of similar independent offenses before or
after that upon which he is being tried, and having no
apparent connection therewith, is admissible to prove
such intent or knowledge. (3) If the facts and cir-
cumstances tend to show that the person committed
an independent dissimilar crime to enable him to
perpetrate or to conceal the offense for which he is

being tried, evidence of the independent crime is ad-
missible against him when the intent to perpetrate or
conceal the independent offense furnished a motive
for committing the crime for which he is put upon
trial.  (4) When a crime has been committed by the
use of a novel means or in a particular manner, evi-
dence of the defendant's commission of similar
offenses by the use of such means or in such manner
is admissible against him as tending to prove the
identity of persons from the similarity of such means
or the peculiarity of the manner adopted by him.''
These admirably stated exceptions are supported by
a multitude of cases and text writers, from which we
may select as examples, the following: State v. O'Don-
nell, 36 Or. 222, 61 Pac. 892; Shaffner v. Com., 72 Pa.
60, 13 Am. Rep. 649; People v. Corbin, 56 N. Y. 363,
15 Am. Rep. 427; Bishop's New Criminal Procedure,
vol. 1, sections 1125, 1126; Greenleaf on Evidence,
vol. 1, section 53; Elliott on Evidence, vol. 4, section
2720; People v. Molineux, 168 N. Y. 264, 61 N. E.
826, 62 L. R. A. 193; People v. Seaman, 107 Mich.
348, 65 N. W. 203, 61 Am. St. Rep. 326; State v.
Brady, 100 Iowa, 191, 69 N. W. 290, 36 L. R. A. 693,
62 Am. St. Rep. 560; McGlasson v. State, 37 Tex.
Cr. R. 620, 40 S. W. 503, 66 Am. St. Rep. 842; Calkins
v. State, 18 Ohio St. 366, 98 Am. Dec. 121; Devoto
v. Com., 3 Metc. 418; Clark v. Com., 111 Ky. 443, 63
S. W. 740, 22 Ky. Law Rep. 517; O'Brien v. Com.,
89 Ky. 354, 11 Ky. Law Rep. 534, 12 S. W. 471;
O'Brien v. Com., 115 Ky. 608, 74 S. W. 666, 24 Ky.
Law Rep. 2511; Bess v. Com., 116 Ky. 349, 26 Ky.
Law Rep. 839, 77 S. W. 349; Barnes v. Com., 101 Ky.
556, 19 Ky. Law Rep. 171, 41 S. W. 772; Denham v.
Com., 119 Ky. 508, 27 Ky. Law Rep. 171, 84 S. W.
538; Raymond v. Commonwealth, 123 Ky. 368, 96 S.

W. 515, 29 Ky. Law Rep. 785; Snapp v. Common-
wealth, 82 Ky. 173, 6 K. Law Rep. 34.

The authorities also agree that evidence of inde-
pendent crimes is more particularly admissible when
the charge under investigation is uttering forged
paper, counterfeiting, receiving stolen property, and
embezzlement; the reason for this being that the de-
fense of mistake or ignorance or lack of guilty knowl-
edge is more frequently interposed as a defense by
the accused in cases of this character than in prose-
cutions for other offenses. Hence it is well settled
by the authorities before cited that in prosecutions
for embezzlement, when the defense is that the ac-
cused did not intend to commit the embezzlement, or
that the act alleged to constitute the crime was the
result of accident, mistake, or oversight, evidence of
other embezzlements is admitted for the purpose of
showing an evil intent and a guilty knowledge in the
commission of the crime under investigation. But in
the case before us, as there was no attempt to rely
upon a defense of this character, evidence of other
acts of embezzlement by the accused were not neces-
sary to establish his guilty knowledge, evil intent, or
bad motive, nor were they so inseparably connected
with the Staggenburg transaction as to be a part of
it. The only issue in the case was whether or not the
accused had sold whisky to and collected money from
Staggenburg. He said he did neither. If his iden-
tity had not been a question in the case, we are unable
to perceive upon what theory evidence that he col-
lected money from other persons and failed to pay it
over would be relevant under a prosecution for em-
bezzling money collected from Staggenburg, any more
than evidence of other offenses would be relevant in
prosecutions for larceny, or burglary, or arson, where

the defense was an alibi.  The issue did not present
a case of accident, mistake, oversight, error in book-
keeping, or other facts tending to prove lack of evil
intent.  Leaving out of consideration the identity of
the accused, · the embezzlements from Hennessy and
others at different times and places did not throw any
light upon the embezzlement from Staggenburg.  Nor
were they necessary to establish an evil intent in the
Staggenburg transaction, because, as we have seen,
it was a separate, disconnected transaction.  It stood
alone.  The question of evil intent or guilty knowledge
was in no wise involved in view of the defense made.
In this connection it may be asked, at what stage in
the trial can the Commonwealth introduce evidence
of other offenses, when such evidence is competent?
In answer, we say that evidence of this character may
be offered whenever the nature of the defense is dis-
closed that will permit it.  If in the opening of the
case it appears that the accused will rely on any of
the defenses before mentioned, to show lack of evil
intent or guilty knowledge, then the Commonwealth
may put in its evidence in chief; but, if the nature of
the defense is not disclosed until the evidence for the
accused is offered, it may come in rebuttal, and this
we consider the safer practice.  It may also be re-
marked that, if the appellant had denied that he was
acting as agent for the company, it would be compe-
tent to prove by other witnesses than Staggenburg
that he had represented himself to them as its agent.

Another objection is that it was not shown by com-
petent evidence that the Consumers' Distilling Com-
pany was an incorporated concern.  It is argued that
in cases of this character it is necessary that the orig-
inal articles of incorporation, or a copy of the record
showing the incorporation, should be produced.  Un-

der the statute the crime of embezzlement can only be committed in connection with the property, money, or effects of a bank or corporation. It is therefore essential that there should be sufficient evidence of the incorporation of the concern, the money, property, or effects of which is embezzled. The question then is, can the facts of incorporation be shown by parol evidence, or is it necessary that the record should be produced? We do not think that record evidence of the incorporation is essential to show that fact. It may be shown by parol evidence. In Thompson on Corporations, section 7713, it is said: "In criminal prosecutions, when the question arises whether a company is incorporated, for instance, in a case of a prosecution for larceny of the property of an alleged corporation, or for a forgery of the bills of an alleged banking corporation, it is only necessary to show that the corporation exists de facto, and this may be proved by general reputation; in other words by proving by parol testimony that it is a corporation de facto, doing business as such." This general principle is fully supported in Calkins v. State, 18 Ohio St. 367, 98 Am. Dec. 121; Thalheim v. Florida, 38 Fla. 169, 20 South, 938, and State v. Thompson, 23 Kan. 338, 33 Am. Rep. 165. In Standard Oil Company v. Comth., 122 Ky. 440, 91 S. W. 1128, 29 Ky. L. Rep. 5, the court in considering this question, said: "However, it is not necessary to offer in evidence the articles of incorporation. The de facto existence of a corporation may be established by evidence tending to show that it acted and was accepted in the community as a corporation under the name alleged. In fact, any evidence tending to show that it is a corporation is sufficient." To the same effect is Geo. H. Goodman Co. v. Com., 99 S. W. 252, 30 Ky. Law

Rep. 519.   Under the sound rule anounced in these authorities, in a prosecution against a corporation, or in a prosecution against a person, for embezzlement or other crime committed against a corporation, the corporate existence may be shown either by the record, or by evidence of persons who are able to state that the concern in question is a corporation, or by other facts or circumstances showing that it is a corporation.   In a prosecution for embezzling the money or property of a bank, insurance company, or of a railroad doing business in this State, it would not be necessary to prove in any way the fact of incorporation, because under the statute these institutions cannot conduct business until they have been incorporated.   But as to other concerns that may do business either as corporations, partnerships, or individuals, the fact of incorporation may be shown in the manner before stated.

On the trial appellant introduced a witness for the purpose of proving by him that he was qualified as an expert in the examination of handwritings, and that a letter purporting to have been written by Bradford Morse to the company was in the same handwriting as the receipts Staggenburg and others testified were given them by the accused.   The trial judge refused to admit this evidence, and this ruling is complained of.   The reason for the ruling does not appear in the record; but we assume it was because it was not shown that the letter purporting to have been written by Bradford Morse was in fact written by him, and that the statute in relation to disputed handwriting was not complied with.   Looking at the matter from this standpoint, the ruling was correct. If writings admittedly made by Bradford Morse had been offered or introduced on the trial, it would have

been competent to prove by a person qualified to express an opinion upon disputed handwritings that the genuine writings of Bradford Morse and the papers produced by Staggenburg and others appeared to have been written by the same person. The rule as to the admissibility and comparison of disputed handwritings is prescribed by the act following section 604, Civ. Code Prac., and when it is proposed to introduce evidence of this character, these statutory provisions must be followed.

It is further urged that, as agents of the company were allowed to collect and retain commissions, appellant could not be guilty of embezzlement, because he had the right to collect a part of what he retained, and, having the right to collect a part thereof, was not guilty of the statutory offense of embezzlement in collecting and retaining the whole of what he collected, although he might have converted the same to his own use. This precise question was settled adversely to the contention of the appellant in Comth. v. Jacobs, 126 Ky. 536, 104 S. W. 345, 31 Ky. Law Rep. 921. In that case Jacobs was employed by the Western & Southern Life Insurance Company to solicit insurance and collect premiums. His contract with the company provided that he should receive as a salary 15 per cent. of what was actually collected each week and paid to the company. He collected a number of policy holders money which he failed to pay over. The trial court was of the opinion that, as Jacobs was entitled to 15 per cent. of the money, he was not guilty of embezzlement in retaining the whole of it; but this court, in reversing the judgment, said: "Although the defendant was entitled to 15 per cent. of the fund as his commission, he held the remaining 85 per cent. as the agent of the company;

and, when he embezzled it, his act was as much within the purpose of the statute as if he had been entitled to nothing for commissions and had embezzled the whole fund.'' . Nor is the point well taken that, because under the contract appellant was not permitted to collect anything except commissions, he could not be guilty of embezzlement in collecting and converting to his own use money which as agent he had no right to collect. It would be giving a very narrow and inefficient construction to the statute to hold that, when an agent of a corporation by virtue of his agency was placed in a position where he might collect money for the corporation, he could not be charged with the crime of embezzlement if his contract provided that he should not have the right to collect. It is manifest that, if appellant did in fact obtain any money from Staggenburg, he was enabled to get it because he represented himself as the agent of the company; and if as such agent, and in the course of his employment, he collected money for the company represented by him and converted it to his own use, he committed the offense denounced by the statute. The money collected by him, if any, came into his possession by virtue of his agency; and he will not be allowed to escape the penalty of converting it to his own use upon the ground that he was not authorized by the company to collect it, although in fact he did collect it as agent. In Bishop's New Criminal Law, section 363, it is said on this point: ''A case of embezzlement not only may, but must, show a departure by the servant from the line of his duty; and it is contrary to the entire spirit of our law, as well in the criminal department as the civil, to permit a man to set up his own wrong in justification or evasion of any charge against him, or in this instance

to say that, because he added another wrong to the one made penal by the statute, therefore he should escape all punishment. * * * In reason, whenever a man claims to be a servant while getting into his possession the property to be embezzled, he should be held to be such on his trial for the embezzlement.''

The instructions are also complained of, but they are not open to criticism or objection. Although the indictment charged embezzlement of $59.95, a conviction might be had on proof of the embezzlement of a less sum; and the court properly so instructed the jury.

After a careful examination of this record, we have been unable to discover any error prejudicial to the substantial rights of the accused, and the judgment of the lower court is affirmed.

HOBSON, J. (dissenting). In this case the circuit court allowed the Commonwealth to prove other acts of embezzlement committed at about the same time as the prinpical offense and under the same agency, charging the jury that this proof was only to be considered by them on the question of the defendant's guilty intent; and it is held by this court that in so doing he committed an error. The ruling of the circuit court is in accord with the authorities. In a note to Calkins v. State, 98 Am. Dec. 163, the rule is thus stated: ''Evidence of other acts of embezzlement committed at about the same time with the principal offense is admissible to show guilty intent; but such evidence can have no further legitimate effect, and must be confined by the court within its proper scope by means of appropriate instructions, and a failure so to do would be ground for a new trial.'' This statement of the rule is sustained by numerous decisions

in England, by the courts of the United States, and by the Supreme Courts of the different states. In a note to People v. Molineux, 62 L. R. A. 227, the rule is thus stated: "As has been stated, intent is an essential ingredient of all crimes at the common law. In some offenses, the creatures of statute, it is not. Again, in some instances the act by which the crime charged is committed is, in and of itself, evidence of a guilty knowledge or intent, or malice, while in others such act may of itself be innocent, or justifiable, or guilty, and to show the latter it is necessary to prove that such act was done with guilty knowledge or intent. It is in proof of crimes of the latter character that the exception to the rule inhibiting evidence of independent crimes is most liberally extended. These in general are, false pretenses or fraud, forgery, counterfeiting, embezzlement, and receiving stolen property. It should not be thought, however, that evidence to prove intent is confined to the class of cases just mentioned, but in those cases first spoken of, where the commission of the act is of itself evidence of intent, the actual existence of intent, like that of motive, may be shown, to amplify and intensify the theory and position of the prosecution." See, to same effect, 1 Wigmore on Evidence, section 329, Rice's Criminal Evidence, section 460, and 1 Robinson's Criminal Law, section 465.

The court admits that the evidence is competent, but in substance holds that it should be introduced in rebuttal, and then only where the defense is that there was no fraudulent intent. There are two objections to this ruling. The first is that the law is not so written. The administration of the law is uncertain enough at best. The circuit courts must be governed by the rules of law as given in the recognized text-

Morse v. Commonwealth.

books based upon the course of judicial opinions; and when, in so doing, they are not sustained by this court, by what principles are they to be governed? The other objection is that embezzlement is a fraudulent conversion of the principal's property by the agent. Our statute makes the fraudulent conversion the gist of the offense. To show a fraudulent conversion is therefore a part of the Commonwealth's case, and the Commonwealth should make out its case in chief, not in rebuttal. Where the agent collects the principal's money, a fraudulent intent may be inferred from the fact that he does not pay it over; but this is an inference which the jury may or may not make under the proof, and so, where the Commonwealth can affirmatively show a fraudulent intent by other evidence, it should do so, just as the Commonwealth may show affirmatively expressed malice in a prosecution for murder. In an action for malicious prosecution, the law implies malice from a want of probable cause; but it has not been held that the plaintiff may not show express malice, and certainly such evidence would not be allowed in rebuttal. The fraudulent intent in embezzlement may be shown in chief by the Commonwealth, just as express malice may be shown in prosecutions for murder or in actions for malicious prosecution.

I concur in the affirmance of the judgment, but I do not concur in so much of the opinion as holds that the circuit court erred in admitting the evidence referred to in chief.