CASE 67—PETITION ORDINARY—MAY 10.

# Kendall's Executor v. Collier.

APPEAL FROM GRANT CIRCUIT COURT.

1. NON EST FACTUM—EVIDENCE.—While the main issue in this case is as to the validity of the note sued on, under the plea of "non est factum," yet as all indebtedness of every kind is denied by the answer, and a full and final settlement between the parties is pleaded in the answer and put in issue by the reply, testimony tending to show an existing indebtedness to plaintiff from the defendant's testator, whose name was signed to the note, was properly admitted.

2. TESTIMONY AS TO TRANSACTIONS WITH DECEDENT.—While the testimony of plaintiff as to transactions with the decedent may not have been prejudicial because the facts to which he testified were established by the testimony of other witnesses, yet upon another trial the court should exclude such objectionable testimony.

3. TESTIMONY AS TO HANDWRITING.—To enable one to testify as to the genuineness of the handwriting of another it is sufficient that he has seen him write.

4. SAME.—A witness who expresses an opinion as to the genuineness of the handwriting of another, whether as an expert or having seen the person write, should be allowed to give the reasons for his opinion.

5. SAME.—It was error to permit a witness, in addition to his statement as to the genuineness of the signature in question based on his knowledge from having seen the decedent write, to testify that he had examined the note sued on several months before, with a view to having it discounted by a bank with which he was connected, that he had then compared this signature with the signature of decedent to other papers which he knew to be genuine, but which other papers he had now lost and was unable to produce, and that he had sent this note with these other papers to a bank expert for the purpose of having him compare the signature, and that after this investigation his bank had actually discounted the note.

DICKERSON & WILLIS FOR APPELLANT.

1. The only defense made to the note was *non est factum*, and all testimony was inadmissible except such as tended to elucidate the one question whose handwriting the signature was.

2. It was error to allow the appellee to testify against the decedent

as to transactions had with said decedent, and acts done or omitted to be done by him. (Civil Code, sec. 606, sub-sec. 2; Jeffers v. Simpson, &c., 11 Ky. Law Rep., 328.)

3. The testimony of witnesses that decedent had at various times extending over several years admitted that he had plaintiff's money was incompetent because:

(a.) Evidence of indebtedness is not competent or relevant on an issue of *non est factum:*

(b.) The witnesses do not specify a sum corresponding to the amount of the note, or fix the date of the conversations either at or near the time the note was executed:

(c) The amounts are so indefinite as to be incompetent upon any issue:

(d.) The conversations extended over a period of several years, during which time the relations of the parties were continually changing.

4. The admission of testimony of witnesses who testified as experts in handwriting, and expressed their opinions as to the genuineness of the signature, was erroneous, none of them having ever held positions in business which made it necessary to scrutinize and examine signatures and handwritings.

5. It was error to permit a witness to testify that he had, prior to the trial, made an examination of the note with a view to its purchase by the bank of which he was vice-president, and compared it with other checks and writings, which had afterwards been lost, and had sent them to a bank expert in Cincinnati for examination, and that the bank had afterwards discounted the note. (Civil Code, sec. 604 and Amendment of May 17, 1886.)

6. The court improperly refused to allow the witnesses for the appellant to give their reasons for their opinions that the signature was spurious, after permitting the appellee to give reasons for opinions that it was genuine.

7. The verdict of the jury was flagrantly against the evidence.

8. The note was not signed at the close of the instrument as required by sec. 468, of the Kentucky Statutes.


A. G. DeJARNETTE for appellee.


1. The objection raised to the testimony of appellee can not avail since he did not testify "concerning any verbal statement of, or any transaction with, or any act done, or omitted to be done , by the deceased," and besides no exceptions were noted to his testimony.

2. The court properly refused to allow the witnesses for appellant, testifying as experts concerning the genuineness of the signa-

ture, to give their reasons for the opinions which they expressed, that being a matter to be brought out on cross-examination in the discretion of the adverse party.

3. The rulings of the court were not prejudicial to the substantial rights of the appellant, since under the testimony of living witnesses, the circumstances confirmatory thereof, and the admissions of the decedent, the finding could not have been otherwise.

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

This action was brought by appellee against appellant H. C. Chinn, as executor of the estate of T. R. Kendall, deceased, on a promissory note purporting to have. been executed by decedent for the sum of five hundred dollars, and also on an open account for the sum of about twenty-six dollars alleged to be owing from decedent at the time of his death, but against which appellee, in his petition, admitted a counter indebtedness on his part to appellant for the sum of about thirty-six dollars.

For the purposes of this appeal it is not necessary that we should notice these smaller items, and we shall treat the case as though it involved the claim on the five hundred dollar note alone.

The answer of appellant denied that this note was executed by his testator, and charged that the signature to the paper, which was filed with the petition, was not the genuine signature of testator, and that the note sued on was not his act or deed. It further charged that appellee and testator had, a short time prior to the death of the latter, a full and complete settlement of their accounts, which showed an indebtedness from appellee to decedent, and denied any indebtedness whatever from the estate of decedent to appellee. To this answer a reply was filed, putting in issue all its material allegations.

On the main issue raised by the plea of *"non est factum,"*

as to the note, much proof was heard on both sides at the trial, and the case, having been submitted to a jury, under instructions from the court, a verdict was returned by the jury sustaining the validity of the note sued on, and in these words, to-wit: "We, the jury, find for the plaintiff the amount of the note sued on, five hundred dollars, with six per cent. interest thereon, from the 17th day of February, 1891, until paid, less balance of nine dollars and seventy-five cents due. the defendant, T. R. Kendall, on account." And a judgment in pursuance of said verdict was entered against appellant by the court below.

Thereupon appellant filed a motion and grounds for a new trial, and, the same having been overruled, he excepted, prepared and presented his bill of exceptions, and prayed this appeal.

The grounds assigned in support of the motion for a new trial are numerous, many of them being based upon alleged specific errors occurring at the trial, in addition to the general alleged ground that the verdict is palpably against the weight of the evidence. As to this general ground, it is sufficient for us to say that the evidence as to the genuineness of the signature in question is conflicting, that there was some competent evidence introduced on both sides of this question, and that it was the province of the jury to weigh and determine on which side the evidence preponderated.

We shall, therefore, confine ourselves to a consideration of some of the alleged specific errors complained of, and, in the first place, as to the admission by the court below of evidence tending to show an existing indebtedness to appellee from appellant's testator, and showing admissions of indebtedness on part of the latter a short time previous to his death, in view of the fact that this case must go back to the

lower court for a new trial, on other grounds, and for the guidance of the court and the parties we desire to say that we do not regard the admission of this testimony as error, under the circumstances of this case. While the main issue in the case is unquestionably as to the validity of the note sued on, under the plea of *"non est factum,"* yet all indebtedness of every kind is denied by the answer, and a full and final settlement between the parties is pleaded in the answer, and put in issue by the reply. This evidence was, in our opinion, properly admitted.

Then, as to the testimony of the appellee himself, the court below must have recognized the fact that by the provisions of subdiv. 2 of sec. 606 of the Civil Code, he is expressly prohibited from testifying as to any transaction between himself and decedent, and yet a small portion of his testimony would seem to fall within the condemnation of that rule. It is perhaps true, as contended by counsel for appellee, that these facts are established by the testimony of other witnesses, and that, for this reason, appellant's substantial rights were not prejudiced by the admission of appellee's statements, yet, upon the return of the cause for another trial, the court should exclude all such objectionable testimony.

Again, as to the contention of counsel for appellant that the testimony of the several witnesses, Blackburn, Ashby, Rhyons and Price, who all gave it as their opinion that the signature of decedent to the note was genuine, should have been excluded, on the ground that they had not shown themselves qualified to speak on this subject, we can not concur with counsel. Neither of these witnesses is shown to possess any special proficiency in the matter of judging of handwriting, or to occupy any position or pursue any calling which would give them special qualifications, or make them

experts in this line.    But, according to the evidence, as
shown in the bill of exceptions, each of them stated that he
had seen decedent write often, and that he knew his hand-
writing.   Surely this knowledge, thus derived, gave each
of them the qualifications necessary to render his testimony
competent, though the value and the weight of such testi-
mony would, necessarily, be left to the jury.   Mr. Green-
leaf says:   "There are two modes of acquiring this knowl-
edge of the handwriting of another, either of which is uni-
versally admitted to be sufficient to enable a witness to tes-
tify as to its genuineness.   The *first* is from *having seen him
write.*   It is held sufficient for this purpose, that the wit-
ness has seen him write but once, and then only his name.
The proof in such case may be very light, but the jury will
be permitted to weigh it." (Greenleaf on Evidence, vol. 1, sec.
577.) Clearly then this testimony was not incompetent.

And this brings us now to the consideration of another
portion of the testimony of the witness, Price, who is a prac-
ticing physician and also vice-president of the Dry Ridge
Deposit Bank, which is, in our opinion, clearly incompetent,
and which should not have been admitted. This witness, in
addition to his statement, as to the genuineness of this sig-
nature, based on his knowledge derived from having seen
decedent write, was also permitted, over the objection of
appellant's counsel, to testify that he had examined this
note several months before, with a view to having it dis-
counted by the bank with which he was connected, that he
had then compared this signature with the signature of de-
cedent to other papers which he knew to be genuine, but
which other papers he had now lost and was unable to pro-
duce, and that he had sent this note with these other papers
to a bank expert in Cincinnati, for the purpose of having

him compare the signatures, and that after this investiga-
tion his bank had actually discounted the note.

It seems to us manifestly incompetent to give a party the
benefit of statements based upon an examination made by
the witness out of court, months before, and upon a com-
parison with signatures to other papers not produced be-
fore the jury, and as to which we have the bare statement
of the witness that they were genuine, to say nothing of his
statements as to having sent them to a Cincinnati expert,
who is not even called on to testify, but as to whose opinion
the jury is left to indulge such presumption as it may see
fit, in view of the fact that, after all this, the bank bought
the note.

The lower court clearly erred in admitting this testimony.

Another ground of complaint urged by counsel for appel-
lant is based upon the refusal of the court below, to permit
any of appellant's witnesses, who testified their belief that
the signature to the note was not genuine, to state to the
jury the ground of, or reason for, such belief.

Appellant introduced a number of witnesses, about one-
half of whom testified from a knowledge of, and an ac-
quaintance with, decedent's handwriting, and the other half,
who were more or less skilled in such matters by reason of
their occupation and experience, from a comparison of the
disputed signature with the signature of decedent to a very
large number of checks and other papers filed in this case,
and admitted to be genuine, and all of whom testified that
this signature was not, in their opinion, genuine.

Appellant then proposed, by further questions, to have
each of these witnesses state the grounds upon which this
opinion was based, and to point out and explain to the jury
the differences which they detected and which induced this
belief on their part. An objection on part of counsel for

appellee to this line of interrogation was sustained by the court. An avowal was made by counsel for appellant as to what would be testified to by each witness, and, over his objection, it was ruled by the court that the witness could state his opinion as to the genuineness of the signature, but that there he must stop, and could not give his reasons therefor, or point out to the jury the supposed discrepancies in the signatures which led to this opinion.

In the ruling we think the court erred to the prejudice of appellant.

Mr. Greenleaf, referring to evidence based upon a comparison of handwriting, says:

"The admission of some evidence of this kind is now too well established to be shaken. It is agreed that if the witness has the proper knowledge of the party's handwriting, he may declare his belief in regard to the genuineness of the writing in question. He may also be interrogated as to the circumstances on which he founds his belief" (Greenleaf on Evidence, vol. 1, sec. 576.)

The Supreme Court of Massachusetts in passing on this identical question, said: "The witness, Smith, who was called as an expert, was rightly allowed to give the reasons for the opinion that he expressed. This point was adjudged in Commonwealth v. Webster, 5 Cush, 301; and in Collier v. Simpson, 5 Car. and P., 73. Tindal, C. J., ruled that counsel might ask a witness, who was called to testify as an expert, 'his judgment and the grounds of it.' The value of an opinion may be much increased or diminished in the estimate of the jury, by the reasons given for it." (Keith v. Lothrop, 10 Cush, 457.)

The closing sentence of this quotation from the Massachusetts case seems to us to suggest a most potent reason in favor of the admissibility of such evidence. To withhold

it from the jury would be to deprive them, to a large extent, of the very facts best calculated to enable them intelligently to weigh and determine the value of the opinion expressed.

The court below, in this case, refused to allow, not only the experts, but the witnesses who spoke from a personal knowledge of decedent's handwriting, to testify on this line, and, in doing so, erred to the prejudice of appellant.

For the reasons indicated the judgment of the lower court is reversed, and this cause is remanded with directions to award appellant a new trial, and for further proceedings consistent with this opinion.