## Mattingly v. Commonwealth.

(Decided October 14, 1927.)

Appeal from Union Circuit Court.

1. Criminal Law.—Refusal to permit comparison in forgery case of alleged forged signature with the writing of a witness, made on the day of trial and acknowledged by the witness, who, defendant claimed, had written the signature alleged to be forged, held error, since Ky. Stats., section 1649, subd. 2, providing that such comparisons may not be permitted where not written before any controversy arose is to protect court and parties from imposition, and is inapplicable where the party whose writing is to be compared is in court and admits the writing.

2. Forgery.—An indictment for forgery, which fails to charge the name of the person intended to be defrauded or that his name was unknown to the grand jury, is insufficient and subject to demurrer.

T. S. WALLER, JR., for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Upon his trial charged with forgery, appellant was found guilty and sentenced to two years' imprisonment.

The essential facts developed on the trial are that on May 5, 1922, appellant prepared, or had prepared, a note payable to Fred Cullen for $200, payable in one year; that he signed the note himself, and then presented the same to Clyde Brown, and requested him to sign it as surety, saying to him that he expected to get T. L. Finney to also sign as surety; that Brown thereupon signed it and never thereafter saw the note until the spring of 1926, when he paid it, and at that time the

name of T. L. Finney was signed to the note. Finney testified that he never signed it, and never authorized any other person to sign it for him, and there is no evidence for the commonwealth showing when the name of Finney was placed on the instrument.

The defendant, however, testified that he sought a loan from Cullen of $200, and offered Brown as surety, but that Cullen desired additional security, and stated to him that Finney would be acceptable; that, after appellant and Brown had signed the note, he went to see Finney, who agreed to sign it, but said he also wanted Ed Irby to sign it, and that then appellant and Finney went to see Irby; that Irby declined to sign it upon the ground that his name would be of no value; and that thereafter Finney, who said that he had left his glasses as home, told Irby to sign his name to the note, and that Irby did sign Finney's name to it in the presence of appellant and Finney.

In rebuttal, both Irby and Finney testified, in substance, that no such thing as detailed by appellant in his evidence had occurred; and that Irby did not sign the name of Finney.

It will be seen, therefore, that the all-important question in the case was whether Irby signed the name of Finney to the note.

On the day of the trial, Irby wrote the name "T. L. Finney" on a slip of paper, and admitted on the trial that he had so written it. The plaintiff then introduced two bankers of Morganfield, who qualified as handwriting experts, and offered to prove by them, after an examination of the original note and of the paper upon which Irby admitted he had written the name of T. L. Finney, that the writing on the two papers was written by one and the same person in their opinion, and the court declined to permit the witnesses so to testify.

Section 1649, Ky. Stats., provides:

"In any action, prosecution or proceding, civil or criminal, which is now pending, or may be commenced hereafter, upon a dispute as to the genuineness of the handwriting of a person, other handwritings of such person, though not in the case for any other purpose, may be introduced for the purpose of comparison by witnesses with the writing in dispute; and such writings, and the testimony of witnesses respecting them, may be submitted to the

court or jury as evidence concerning the genuineness of the writing in dispute: Provided, that—

"1. The genuineness of such writings shall be proved, to the satisfaction of the judge, by other than opinion evidence.

"2. It must be proved, to the satisfaction of the judge, that they were written before any controversy arose as to the genuineness of the writing in dispute, and that no fraud was practiced in their selection.

"3. A party proposing to introduce such writings must give reasonable notice of his intention to the opposite party, or his attorney, with reasonable opportunity to examine them before the commencement of the trial.

"4. The judge may limit the number of such writings.

"5. An error of the judge shall be subject to revision and correction in the same manner as if the error had been committed by the court."

It is not clear why the court declined to permit this evidence to be introduced, but it is probably because of his opinion that the writing proposed to be compared with the one in controversy had been written after the controversy arose, as is provided against it in the second proviso.

A similar question was presented in the case of Pulliam v. Sells, 124 Ky. 310, 99 S. W. 289, and the court, after a consideration of the question under this precise statute, said:

"All of the provisos attached to that section are for the purpose of protecting the party against whom the expert testimony is to be introduced from imposition by undertaking to prove the genuineness of the disputed signature by comparison with writings not fully proved to be genuine. All this is rendered unnecessary when the party admits the genuineness of the writing to be compared with the disputed signature."

Obviously the statute first distinctly made such evidence competent when given by expert witnesses; and then, by way of throwing the proper safeguard around the genuineness of the writings proposed to be used by way of comparison, inserted those provisos to enable

the court to protect itself and the parties from imposition. But in this case we have the party, whose signature is in question, in court admitting that he made the writing which is to be used by way of comparison.

On authority of the case quoted from, therefore, we must hold that the court erred to appellant's prejudice in rejecting this evidence.

On the trial below no demurrer was filed to the indictment, but after the verdict the defendant undertook to raise the question of its sufficiency by a motion in arrest of judgment. As, however, the judgment must be reversed for the reason above given, it is not deemed necessary to pass upon the action of the court in overruling the motion in arrest of judgment; but we deem it proper to say that under many opinions of this court the indictment would have been insufficient on demurrer because of its failure to charge the name of the person intended to be defrauded, or that such name was unknown to the grand jury.

Because of the refusal of the court to permit the introduction of the testimony indicated the judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.