# Howard v. Commonwealth.

(Decided October 20, 1931.)

W. R. PRATER and H. H. RAMEY for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Callie Howard appeals from a judgment convicting him of manslaughter, and fixing his punishment at six years' imprisonment.

The evidence is as follows: Appellant and the deceased, Gold Howard, were first cousins, and were on friendly terms. On the day of the homicide appellant and his wife had been to church, and were returning home. On the way they were hailed by deceased, who asked appellant to permit him to ride behind him. Appellant was riding a horse at the time, and consented to the arrangement. The deceased got up behind appellant, and was riding with his hands on appellant's shoulders. The deceased had two pistols on his person. After they had gone several miles, appellant shot the deceased four times. According to Russell Day Wireman, who claims to have been in a field about 50 yards from the place of homicide, appellant drew his pistol and fired two shots into the deceased, who fell off his horse. After the deceased fell from the horse, appellant fired two or three more shots into his body, and rode away. When the body was found, neither pistol carried by the deceased had been fired. Mont Smith and Wireman were together at the time. In an affidavit given prior to the trial, Wireman and Mont Smith each stated that they had stayed the previous night at the home of William Smith, a

brother of Mont Smith. At the trial Wireman changed his story and said that he had spent the night somewhere else. It is claimed that he did this because William Smith and his wife had been subpœnaed as witnesses, and he knew they would contradict his statement in the affidavit. After the homicide, Wireman said that he went to the home of Dora Neely, his aunt, and the aunt of the deceased, but did not tell her that he had seen him killed. Afterwards he went to his own home and did not tell his own mother, who was an aunt of the deceased, or any of the members of his family, that he had seen the homicide. He also went to the home of John Morgan Howard, a brother of the deceased, and spent the night, but did not make known to him that he was an eyewitness to the killing. In addition to this, his reputation for truth and veracity was impeached. Mont Smith, who it is claimed was with Wireman at the time, went away and did not appear as a witness. Bob Vanderpool, who lived on Licking river near the place where Gold Howard was killed, saw him and appellant as they passed his home about two hours before the homicide. He also saw Russell Wireman and Mont Smith on the other side of the creek from his home. He did not see the killing, but heard the shots. He then went to the place of the homicide. The body of deceased had not been moved. Two pistols were taken from his body, and neither of them had been shot. He then indicated where the shots entered the body of the deceased. About five months before the killing he had a conversation with appellant, during the course of which appellant stated that "Gold Howard had killed his hound, and he would give him the same damn dose." He never communicated the threat to the deceased, or to any of his relatives. He did tell his mother the same day he heard the talk.

On the other hand, appellant testified as follows: He and his wife had been to church at Brushy Fork of Licking. On their way home he passed big John Shepherd's. Gold Howard hailed him there and wanted to ride behind him. Howard was "awful drunk", and he fixed a raincoat to save Howard's clothes. He and Howard were the best of friends. Howard had killed a man in Floyd county, and began talking and crying about some one turning him up for the reward. He told Howard if he did not quit drinking so much he would get caught. Howard became mad and said, "By God, who will do it?" His intention was to tell Howard that the officers

might, but he did not have time. Howard said, "God damn, you are one of them." He replied, "You know I would not, I am your friend." Howard said, "You are just a God damn liar." About that time Howard jumped one way off the horse, and he went the other way. Howard was getting his gun. He fired one shot, and the horse jumped in between them. Howard threw his pistol on him and he shot as fast as he could. At the time he fired, Howard had made for his gun. At the time Howard jumped off the horse, he said, "You God damn liar, I will kill you." He shot Howard because he was afraid he would be killed. He did not tell Bob Vanderpool that "Gold Howard had killed his dog, and he was going to give him the same damn dose." After the killing took place, he went and got his horse, turned, and came into Salyersville and gave himself up. After that he went before the grand jury and told them of the trouble. No other witnesses appeared before the grand jury. Dud Howington testified that in company with others he made an experiment with the view of ascertaining the distance that the firing of the pistol would powder burn or ignite the clothing. He trimmed a bush and hung a vest on it. He then measured 6 inches with a tape line out and set a stick down. He placed the muzzle of the pistol even with the stick and shot. The shot powder burned the vest and set it on fire. He then fired into the vest at a distance of 18 inches. The result was only a powder burn. He then fired a shot at a distance of 12 inches. This set the vest on fire. They then placed a .45 pistol against the vest, and it blew it all to pieces. It set the vest afire, and they had to tramp on it. On cross-examination he stated that they buttoned the vest around the bush. It was not tied, but hanging on the bush. It was hanging loosely. In rebuttal the commonwealth introduced Boyd Miller, who made an experiment with the vest lying on a poplar log. They fired three shots, one 4 inches away, another about 10 inches away, and the third about 2½ or 3 feet away. The burn was made by the shot furthest away. Joe Wireman testified that he had had right smart experience with shooting pistols into garments, and that a bullet fired into a garment on a person will not burn as much as one lying loosely. All the experiments were made with black powder cartridges, the kind appellant used.

At the conclusion of the evidence appellant made a motion to have an experiment made before the jury, but the motion was overruled.

620

The principal ground urged for reversal is that the verdict was flagrantly against the evidence. The basis of this contention is that the verdict was obtained by perjured testimony. In support of this position the argument is as follows: Russell Day Wireman, on whose evidence the conviction was procured, was not only shown to be unworthy of belief, but his story is rendered altogether improbable by the inconsistency between it and the affidavit, and by his failure immediately after the homicide to reveal to Dora Neeley or his own mother and other relatives, or to John Morgan Howard, the brother of the deceased, that he had been an eyewitness to the killing. It is further claimed that the story of the witness is disproved by the physical facts, in that, if appellant had turned in his saddle and shot the deceased, his clothing would have been powder burned, a situation not presented. While the argument is plausible, it is one that should have been, and doubtless was, made to the jury. No rule is better established than that the credibility of the witnesses is a question for the jury. The story told by Russell Day Wireman is not so inherently improbable, or so inconsistent with well-established physical laws, as to make the question of his credibility one for the court. Therefore the case is not one where we can say that the verdict is flagrantly against the evidence.

Another contention is that the court erred in not permitting an experiment before the jury for the purpose of determining the effect of pistol shots on clothing. We need go no further than to say that, in the very nature of things, the experiment could not have been made under the conditions existing at the time of the homicide, and for this reason the court did not err in overruling the motion.

Judgment affirmed.