## Evans v. Commonwealth.

(Decided Sept. 27, 1932.)

HENRY F. TURNER for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Bugger Jim Evans and Raymond Dennis were jointly indicted for breaking and entering the storehouse of George Tanner at Barlow in Ballard county with intent to steal therefrom. On separate trial, Evans was found guilty and his punishment fixed at imprisonment for one year.

He has appealed, relying on the following grounds for reversal of the lower court's judgment: (1) Admission of incompetent evidence; (2) that the verdict is flagrantly against the evidence; (3) that the commonwealth's attorney in his closing argument made improper and prejudicial statements to the jury.

The evidence discloses that some time during the night of May 18, 1929, some person or persons broke and entered the store of Mr. Tanner and carried away the cash register, a number of cartons of cigarettes, and other articles of merchandise. The cash register was later found in a thicket between Barlow and Wickliffe and a number of cartons of cigarettes, which it is claimed belonged to Mr. Tanner and were taken from his store, were recovered by officers and returned to him. So far as the record discloses, no other articles were recovered. The evidence further discloses that, within a few days after the store was broken into, appellant and Dennis sold several cartons of cigarettes in Wickliffe. Two witnesses testified that they purchased cartons of cigarettes from appellant, and one of them stated that Dennis was present at the time the sale was made. The cigarettes taken from the store were well-known brands usually kept in stock by all dealers, and the cigarettes recovered were of these brands. Mr. Tanner testified that the cigarettes recovered from parties to whom Dennis and appellant had made sales were of the same brands as the cigarettes taken from his store, and further stated on redirect examination that he could identify these cigarettes because of the

manner in which the cartons had become soiled while in the store. Appellant admitted that he sold some cartons of cigarettes to Joe Reno, but stated that they belonged to Dennis. His explanation of the matter was that he owed Reno $2, and that Dennis was indebted to him, and that he, with the consent of Dennis, was adjusting the accounts in this way. He denied making a sale to the other witness, and it might be added that this other witness, while on the stand, admitted that he had served three or four terms in the penitentiary.

Mr. Tanner testified that he left the store about 10 or 11 o'clock, and that some time afterward there was a light rainfall. He and another witness testified to having seen automobile tracks on the north side of the store leading out to the Wickliffe road which apparently were made after the rain. The other witness testified to having seen these tracks for some distance out the Wickliffe road.

Appellant admitted that he was in Barlow on the evening of May 18, but stated that he was on his way from La Center to Wickliffe in his Ford automobile, and was accompanied by Raymond Dennis; that they stopped in Barlow, had lunch at a restaurant, and then drove over the town, leaving about 7:30 and going directly to Wickliffe; that shortly after arriving in Wickliffe he went directly to the home of his sister and brother-in-law, Mr. and Mrs. J. L. Turk, with whom he was living, and there spent the remainder of the night. Mr. and Mrs. Turk testified that appellant arrived at their home about 10 o'clock, parked his automobile in the yard near his bedroom window, as was his custom, went to bed in a room adjoining theirs, and remained there through the night. They stated that appellant was afflicted with tuberculosis, and they heard him coughing at intervals during the night, and also that they could have heard the noise of the automobile if he had started it.

The commonwealth introduced the following letter:

"Chicago, Ill., June 6th, 1929. Dear Raymond— Just a line to let you know that I am still on the go— Say kid I just got back from Kentucky last night and boy howdy they sure did come damn near catching me and I don't mean no. There was five laws out to my

sister house after me Tuesday morning how they knew I was there I don't know and don't give a dam either. But kid they sure know that we did the job all righty. That night watchman in Barlow said he could have filled us full of buck shots he taken the number of my Ford also and they think we pulled that job in Wickliffe too ain't some people crazy in this world. But let me tell you something boy you take a dam big fool's advice and don't go back to that country for at least five years. Now boy I am telling you something and I don't mean maybe either. They have a hundred and fifty dollar reward for us what do you know about that boy. . . . but I am going to California if I have to walk all the way and I don't mean no about that either. Raymond did there any mail come through for me that was the reason why I didn't write to you. . . . Always your friend Billy Evans.''

Marshall Rollins testified that he went to Illinois for Raymond Dennis, and that this letter was given him by a detective at the jail. There is no evidence to show that it was taken from the possession of Dennis. The commonwealth also introduced in evidence a bond which previously had been signed by appellant, and, when it was introduced and the clerk was asked about the signature, appellant's counsel admitted that appellant signed the bond. Mr. M. H. Cain, who was introduced as a witness for the commonwealth, stated that he had been engaged in the banking business for over 30 years, and, while he did not claim to be an expert on handwriting, his business had required him to study and compare signatures. He gave as his opinion that the letter was in the same handwriting as the signature on the bond. Ben B. Morris, county attorney, testified that in his official capacity he had had experience in comparing handwriting; that he examined the letter and the signature to the bond under a glass and pointing out some of the similarities, stated that in his opinion the handwriting was identical.

Appellant denied that he wrote the letter or had any knowledge of it, and stated that he was not in Chicago on June 6, but was at the home of his sister in Ballard county. His sister and brother-in-law testified that he was at their home on that date.

The first argument, relative to the admission of alleged incompetent evidence, is that the court erred

in admitting the letter in evidence and in permitting witnesses, other than experts, to compare it with other writing and to give opinions as to whether it was in the handwriting of appellant. It is urged by counsel that appellant had no notice that the letter would be introduced or a comparison made by the witnesses between that and other writing. While it is not so stated, this argument evidently is based upon the provisions of section 1649, Kentucky Statutes. Conceding that the statute in question applies in cases of this character, appellant's counsel waived its provisions when he admitted that the bond was signed by appellant.

In the case of Pulliam v. Sells, 124 Ky. 310, 99 S. W. 289, 290, 30 Ky. Law Rep. 456, the opinion referring to this section of the statute said:

"All of the provisos attached to that section are for the purpose of protecting the party against whom the expert testimony is to be introduced from imposition by undertaking to prove the genuineness of the disputed signature by comparison with writing not fully proved to be genuine. All this is rendered unnecessary when the party admits the genuineness of the writing to be compared with the disputed signature."

And this was quoted and followed in the case of Mattingly v. Commonwealth, 221 Ky. 360, 298 S. W. 950.

It is equally apparent that the court did not err in admitting the evidence of Messrs. Cain and Morris with respect to these writings on the grounds that they were not experts on handwriting. In the first place, it is shown that these witnesses, and especially Mr. Cain, had had a long experience in observation and comparison of handwriting. In the second, it has been held by this court that a nonexpert witness may give his opinion as to the genuineness of a signature or writing called in question, if it has been shown that he has otherwise familiarized himself with the signature and handwriting of the person whose signature is involved. Pioneer Coal Co. v. Polly, 208 Ky. 548, 271 S. W. 592; Kendall's Ex'r v. Collier, 97 Ky. 446, 30 S. W. 1002, 17 Ky. Law Rep. 337. In the light of the proven circumstances and the authorities cited, the court did not err in the admission of this evidence.

It is further argued that the court erred in permitting the witness Jack Wallace to testify that he purchased cigarettes from Ray Dennis when appellant was not present. Clearly, if this evidence was incompetent, it was not prejudicial, since appellant admitted that Dennis was selling some cigarettes and that he sold some for him.

The competency of some other evidence is called in question, but, without going into detail, we deem it sufficient to say that we have considered all the evidence called in question, and concluded that no prejudicial error was committed by the court in this respect.

Since we have held that the court did not err in the admission of the evidence with respect to the letter hereinbefore set out, it cannot be consistently urged that the verdict is flagrantly against the weight of the evidence.

Some question is made as to the credibility of witnesses, but this, like the weight to be given evidence, is a matter peculiar to the province of the jury. Howard v. Commonwealth, 240 Ky. 617, 42 S. W. (2d) 881; Ely v. Commonwealth, 239 Ky. 638, 40 S. W. (2d) 276.

Contention that appellant was prejudiced by the closing argument of the commonwealth's attorney is based on the following statement made by him: "I have a right to presume that Raymond left here with this defendant in his car, and went to Chicago with him." There is nothing in this statement calculated to inflame or prejudice the minds of a jury. This court has often held that a jury is presumed to be composed of sensible men, and certainly a sensible jury who had heard the evidence was not misled by this statement of the commonwealth's attorney.

On a consideration of the entire record, we find no error prejudicial to appellant's substantial rights, and the judgment is therefore affirmed.