## Rosenberg v. Commonwealth ex rel. Otte.

(Decided June 12, 1934.)

H. A. I. ROSENBERG, pro se.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, and W. CLARKE OTTE, Commonwealth's Attorney, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

H. A. I. Rosenberg, a member of the Louisville Bar, appeals from a judgment of disbarment.

The informations were filed in the Jefferson circuit court, common pleas branch, fourth division, then presided over by Judge William Krieger, and it first is insisted that appellant's affidavit was sufficient to require Judge Krieger to vacate the bench. One of the grounds stated in the affidavit was that he intended to use Judge Krieger as a witness on the trial of the proceeding. Neither in his motion nor affidavit did he state that Judge Krieger was present at, or knew anything about, the transactions on which the disbarment proceeding was based, or give any other reason why he intended to call him as a witness. If the defendant in a disbarment

proceeding or criminal prosecution could compel the trial judge to vacate the bench by the mere statement that he intended to call him as a witness, he could continue the proceeding indefinitely, and never be brought to trial.

Another ground relied on is that Judge Krieger was so biased and prejudiced against him that he could not sit fairly and impartially, but would deliberately and arbitrarily decide the case against appellant. No facts were pleaded showing that Judge Krieger entertained any feeling of enmity or hostility toward appellant. The basis of the claim of bias and prejudice is that Judge Krieger made some adverse rulings against appellant without first giving much or any thought to appellant's contention. There is the further allegation that the proceeding was brought before Judge Krieger in contemplation of the fact that he would be hardboiled and would be prone to respect and observe the expectations and demand of the bar association that he and other attorneys be dealt with summarily and without consideration or mercy, and that this was shown to be correct in the case of one Meyers, who was suspended from practice for the unreasonable length of time of one year and given a stinging rebuke and reprimand in positive disregard of section 104, Kentucky Statutes. In the very nature of things a judge must rule for or against one of the parties to the litigation, and the mere fact that he does so has never been regarded as sufficient evidence of bias or prejudice to require him to vacate the bench. Of course, the other allegations have no bearing on the question of bias or prejudice. The bias or prejudice that will require a judge to vacate the bench in a disbarment proceeding is a personal bias or prejudice against the respondent, and not a general feeling against professional misconduct. As the affidavit stated no facts showing that Judge Krieger was personally biased or prejudiced against appellant, it is clear that he did not err in refusing to vacate the bench. Chreste v. Commonwealth, 178 Ky. 311, 198 S. W. 929.

A statement of the facts will be necessary for a proper consideration of the other grounds urged for a reversal. The proceeding was based on two informations, styled by Judge Krieger as "The Magnifico Information," and "The Thomas Gentry Information."

The facts resulting in the "Magnifico Information" are as follows: Magnifico was the owner of a $207.50

note executed to him by Adam J. and Flora Romiser, and representing part of the consideration for the conveyance of certain real estate which he had conveyed to the Romisers. Magnifico had employed Gordon R. Kinsey to defend him in a criminal prosecution, and had paid him for his services. After the sale of the property to the Romisers, Magnifico met Kinsey, who, after inquiring about the Romiser note, suggested that there was doubt concerning its validity, and whether it was a first lien on the real estate, and requested Magnifico to deliver the note to him for investigation. Believing that appellant and Kinsey were partners, Magnifico left the note at Rosenberg's office for Kinsey. Appellant sold the note to Edward B. Nugent. The note purported to have been assigned and indorsed by Magnifico, and immediately under the indorsement was the admitted signature of appellant. Magnifico demanded that appellant return the note, but the note was never returned. Thereupon he notified the Romisers not to pay the note. Nugent instituted suit on the note and made appellant a defendant. Magnifico filed a cross-petition setting out the fraudulent manner in which the note had been obtained from him by Kinsey and appellant, and both Kinsey and appellant permitted judgment to go against them by default. Appellant's defense to this information is that Magnifico delivered the note and $50 for payment on a $750 fee which Magnifico had agreed to pay appellant and Gordon R. Kinsey for certain professional services. The note and money were delivered to appellant's stenographer with directions that the same be in turn delivered to appellant or Kinsey, and that the act of the said Magnifico was free and voluntary, without persuasion, influence, or demand of appellant, or any other person acting for him either directly or indirectly, and that he was not guilty of fraud or wrongdoing in any way.

The facts leading to the "Thomas Gentry Information" are these: Gentry was charged in the court of Esquire Don Warren, justice of the peace, with unlawful possession of intoxicating liquor, and employed appellant to defend him. On the day the case was set for trial appellant appeared and secured a continuance to another day. Before the second calling of the case appellant advised Gentry to raise $134 with which to pay a possible fine, court costs, and a fee of $75. Gentry

delivered the sum requested to appellant and took his receipt. Shortly thereafter Gentry was informed by appellant that the matter had been straightened out. Upon the second calling of the case neither Gentry nor his attorney was present in court. The court rendered judgment fixing Gentry's punishment at a fine of $100 and 30 days in jail, and requiring Gentry to execute bond for $1,000 to keep the peace for one year. Gentry was arrested and satisfied the judgment by paying the fine and serving the sentence. Upon his release Gentry demanded of appellant the return of his money, or at least so much of it as was given him to pay the fine, and was given $1. To this information appellant entered his appearance, but made no defense.

One of the grounds urged for reversal is that the court did not submit the issues of fact to a jury. While there may be cases of disbarment proceedings where the court may with propriety submit issues of fact to a jury, no such case is here presented. There was no response to the Thomas Gentry information, and the response to the Magnifico information was adjudged insufficient. Therefore, the case is one where the essential facts stand admitted, and that being true, there was nothing to submit to a jury.

The contentions that appellant's demurrer was improperly overruled, that his response should have been held sufficient, and that the judgment of disbarment was too severe and contrary to law, will be considered together. Before one may be admitted to the bar, he must furnish evidence of his moral character and fitness, and, as has often been pointed out, the continued possession of a good moral character is essential to the maintenance of that relation. The reasons for the rule are at once apparent. The office of attorney at law is peculiarly one of confidence. Not only do his clients repose trust in his integrity, but as an officer of the court in the matter of administering justice his privileges and duties are such as constantly to call for the exercise of fidelity, both to his client and to the state. A lawyer without good character is not only a reproach to his profession, but he brings into public distrust, and is a very menace to the administration of justice itself. ''His office is a very badge of respectability, a patent of trustworthiness, derived from his position on the court's roll of counsel. He ought not to be suffered to pass for what he is not.'' Underwood v. Commonwealth, 105 S.

W. 151, 32 Ky. Law Rep. 32; Nelson v. Commonwealth, 128 Ky. 779, 109 S. W. 337, 33 Ky. Law Rep. 143, 16 L. R. A. (N. S.) 272. No elaboration of the facts is necessary. They speak for themselves, and show a lack of honesty, probity, and good moral character, from which it necessarily follows that the demurrers to the informations were properly overruled. With respect to the claim that his response should have been deemed sufficient but little need be said. There was no response whatever to the "Thomas Gentry Information" and the facts stand confessed. While to the "Magnifico Information" he responded that the note was delivered in payment of a fee, "and that he is not guilty of fraud or wrongdoing in any way," there was no denial of the charge in the information that he signed or caused to be signed the name of Joseph Magnifico on the note without his knowledge, authority, or consent. It is therefore clear that the response was not sufficient. It is true that, where the evidence is not clear, or the misconduct not of a serious kind, suspension of an attorney from practice for a certain period will often suffice, but where, as here, there are no extenuating circumstances, and the admitted facts show that the attorney is morally unfit to continue in the profession, we cannot say that a judgment of disbarment is too severe.

Judgment affirmed. Whole court sitting.