### Sessmer v. Commonwealth.

### Kinsey v. Same.

### Heyser v. Same.

(Decided Nov. 24, 1936.)

DAVID SESSMER, E. C. O'REAR and ALLEN PREWITT for appellant Sessmer.

J. P. McCORMACK for appellant Kinsey.

RICHARDSON & RICHARDSON for appellant Heyser.

MERIT O'NEAL, Commonwealth Attorney, A. C VAN WINKLE and EDWARD A. DODD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

After an investigation by the local Bar Association, the Commonwealth's attorney, in the name of the Commonwealth, filed a petition and information in the Jefferson circuit court against David Sessmer, Gordon R. Kinsey, Thomas P. Heyser, and William Davidson, practicing attorneys at that bar, charging them with

unethical and unprofessional conduct and improper practices. A rule was asked to issue against the defendants to show cause why they should not be disbarred and their names stricken from the rolls.

The substance of the allegations is· that Heyser, Kinsey, and Davidson had severally conspired with ¡Sessmer and others to blackmail one Dr. Smith, and had done so. The affidavits of Dr. Smith, stating specifically the instances in which each of the several defendants had participated, were filed as part of the petition. In response to the rule, the accused attorneys made defense, 'and after an extended trial it was adjudged that Sessmer be disbarred and the, other three be suspended from the practice of law for two years. A separate appeal is presented by each of the respondents, except Davidson. As all the appeals rest upon the same record, disposition will be made of them in one opinion.

1. The proof ·against the respondents is that Heyser, Kinsey and Davidson, independently one from the other, had during the course of about a year asserted different claims for damages against Dr. Smith. Each was based upon charges of improper advances or criminal assault against women. There was much substantial evidence, direct and circumstantial, showing that the alleged claimants were fictitious or nonexistent persons, and the claims wholly false and fraudulent; that through another conspirator Smith was led to employ Sessmer as his counsel, ·and he and the other attorneys frightened Dr. Smith with threats of unpleasant and disastrous publicity and lawsuits, so that he compromised and settled the alleged claims. Kinsey and Sessmer were joined in two of the sordid and vicious enterprises; Heyser and Sessmer in one; and Davidson and Sessmer in ·another.

The respondents denied any improper practice, insisted the parties were real, and each sought to maintain the good faith of his participation. All denied any conspiracy and any division of the spoils. Heyser and Kinsey insist that if the claims made by them were in fact false, they had been imposed upon; that if their clients had been directed to them by Sessmer for a fraudulent purpose, they were innocent of any such plan or scheme and were victims of his deception.. Sessmer maintains that he was regularly and legiti-

mately employed by Dr. Smith, and though he had urged him to fight the claims and cases, the doctor had insisted on compromising and settling them. He insists that he acted in perfect good faith and had properly represented the interests of his client.

The evidence is, of course, familiar to those most concerned. Recitation of the substance of the voluminous record would not be of importance as a precedent. It would seem enough to say that, realizing the extreme importance of the decision to the parties, the court has given meticulous consideration to the evidence and the respective arguments upon the contentions that the judgment is not supported by the proof. The result has been to reach the conclusion beyond a reasonable doubt that the respondents were proven guilty. The penalties prescribed are not too severe. Indeed, as to the three who have been merely suspended from the practice, we may observe that the trial court dealt quite leniently.

2. Appellants Sessmer and Kinsey submit that their demurrers to the petition and motions to quash the rules should have been sustained, because the charges are but indefinite conclusions. The affidavits of Dr. Smith, which are parts of the petition, supplied the general charges with sufficient specifications as to the part each of the accused attorneys had in the schemes and in each specific case, and stated the acts of misconduct they were severally charged with. The form of the charges and method of procedure were like those approved in Commonwealth v. Roe, 129 Ky. 650, 112 S. W. 683, 19 L. R. A. (N. S.) 413. While a disbarment action partakes of the nature of a criminal proceeding, it is not strictly so. This is especially true when the proceeding is not based upon the authority of specific statutes, but upon the common law right of courts to protect themselves and the administration of justice from those attorneys who are charged with being guilty of such personal or professional conduct as proves them to be dishonest, or bad moral character, or otherwise unworthy of the responsible office to which they have been admitted. Commonwealth v. Richie, 114 Ky. 366, 70 S. W. 1054, 24 Ky. Law Rep. 1218; Lenihan v. Commonwealth, 165 Ky. 93, 176 S. W. 948, L. R. A. 1917B, 1132; Chreste v. Commonwealth, 171 Ky. 77, 186 S. W. 919, Ann. Cas. 1918E, 122; Rosenberg v. Com-

monwealth, 255 Ky. 413, 74 S. W. (2d) 478, Ex Parte Wall, 107 U. S. 265, 2 S. Ct 569, 27 L. Ed. 552. Hence the definiteness and particularity prescribed for an indictment is not required in the petition or information upon which a rule to show cause for disbarment issues. It may be pointed out that the trial of these men was extended over a period of five months. This was apparently to suit the conveniences of the trial judge and the parties themselves, and also, as is reflected in the record, to give the respondents opportunity to offer all the evidence they desired to meet that presented against them. So, under no consideration of their contentions of indefiniteness in the accusation were they prejudiced.

3. The three appellants each submit that it was prejudicial error for the judge to hear evidence concerning alleged misconduct not embraced in the petition.

Kinsey was asked concerning two letters he had written a money lending company, advising it of his employment by the parents of two girls, eleven and fourteen years old, to prosecute claims against the company for detaining them in its office and accusing each of the children of committing a theft. This was about six months before he had written a letter of similar character to Dr. Smith making a claim against him of criminal assault upon a young girl. The respondent introduced several witnesses to show the bona fides of this transaction. The complainants endeavored to show the claims were without foundation in fact and established that the letters were responded to by counsel for the company, to whom they had been referred for defense, and nothing was ever done by Kinsey toward prosecuting the claims for damages.

Similarly, in a proceeding against Heyser, he was asked concerning a claim for damages asserted by him against a citizen for injuries alleged to have been sustained by an automobile striking his client. It was shown that Sessmer represented the defendant and a compromise was effected for $125. This was during the period covered by the several acts charged in the petition. The reality of this claim and the bona fides of the transactions were gone into.

The rule has become elementary that even in a criminal prosecution evidence of other offenses is ad-

missible if it tends to show a plan, system, or scheme of operations. This is particularly so where the accused relies on a lack of intent or a want of guilty knowledge. Furthermore, if the offense has been committed by some peculiar or novel means, evidence of similar offenses committed by the accused in the same way, or by the same means, is admissible to establish an inference from the similarity of method. Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; Jenkins v. Commonwealth, 167 Ky. 544, 180 S. W. 961, 3 A. L. R. 1522; Simmons v. Commonwealth, 210 Ky. 33, 275 S. W. 369. All this evidence, therefore, was competent, and although it came in after the respondents had testified to their good faith, it cannot be deemed strictly as but evidence of impeachment by the proof of collateral matters, as is submitted by Heyser's counsel. As we have stated, apparently by agreement the trial of the case proceeded along over an extended period with numerous and lengthy recesses and without observing much order in the introduction of evidence.

4. The testimony of a handwriting expert was heard to show that some of the receipts and agreements of compromise given Dr. Smith were signed by one or more of the respondents themselves, and not by the alleged clients whose existence was denied. Specimens of Sessmer's handwriting were submitted to the witness for comparison. It is argued by him that the court should not have received this testimony, since there was no compliance with the provisions of subsection 3 of section 1649 of the Statutes, which authorizes the admission of other handwriting not in the case for any other purpose than comparison, if the party proposing to introduce such writings has given to the opposite party reasonable notice and opportunity to examine the specimens before trial. The genuineness of these signatures was admitted, and Sessmer was in court when they were used. The section of the Statutes is therefore not applicable. Pulliam v. Sells, 124 Ky. 310, 99 S. W. 289, 30 Ky. Law Rep. 456; Mattingly v. Commonwealth, 221 Ky. 360, 298 S. W. 950; Evans v. Commonwealth, 245 Ky. 14, 53 S. W. (2d) 196.

5. One of the fraudulent claims asserted against Dr. Smith was in the name of Richard Scott and his wife, Virginia Scott. After extended efforts to locate

persons bearing those names had been unsuccessful, a man with a police record and a woman of ill repute going under the names of Ralph E. Dull and Dorothy Dull (among their aliases) were found. Heyser insists they were located through his efforts after identifying Dull's photograph in the rogues' gallery as being the man who had employed him. Dull was put in jail on a charge of vagrancy. He had been Sessmer's client for several years. Heyser and Dr. Smith identified this man as being Scott, and the former insisted that he had been imposed upon by him. Dull and Sessmer, and perhaps others, denied the identity; Dull denying any knowledge of what had occurred. During his incarceration it appears that this man was visited by Sessmer and another attorney who advised with him, and also by Dr. Smith and his attorney. Later he was brought before the court and made a detailed statement of a conspiracy entered into with Sessmer to extort money from Dr. Smith. Heyser insists that he absolved him of participation, but there are several circumstances that indicate at least his guilty knowledge of what was being done. Shortly after this retraction, or new testimony, the case in the police court against Dull, alias Scott, was dismissed.

In support of a motion for a new trial, Sessmer filed his affidavit that he had been taken by surprise at the change in the testimony of this man; that after he had testified the second time he was held in jail incommunicado until discharged and then promptly disappeared; hence that he did not have an opportunity to confer with the witness and obtain information from him as to why he had changed his testimony. He charges, without support, that the change in testimony was due to promises of immunity and threats made by Dr. Smith and his counsel.

The witness had been cross-examined by the respondents' counsel. There was no motion for another continuance on this account. The point is without merit. Powell v. Commonwealth, 149 Ky. 433, 149 S. W. 891; Means v. Commonwealth, 256 Ky. 30, 75 S. W. (2d) 546. We may add, in view of the attack made upon the testimony of this man, that excluding it entirely there was ample evidence to sustain the judgment.

6. Of as little merit is the point of disqualification of the trial judge. In Sessmer's motion and grounds

for a new trial, he charged upon information and belief that after the hearing of evidence had been concluded, but before argument, the judge had gone before the grand jury and asked for the respondent's indictment. The bill of exceptions contains the statement only that the judge had been subpoenaed before the grand jury during the time given Heyser to make some further investigation in his defense, and that he had responded to all interrogations propounded to him there.

Under the Civil Code of Practice an application for a new trial based upon charges of misconduct of a jury must be sustained by affidavits showing their truth and stating facts, together with the names of witnesses by whom same would be proven. Sections 340 and 343, Civil Code of Practice. Under the Criminal Code of Practice, misconduct of a trial judge comes under subsection 7, section 271, authorizing a new trial for "misconduct of the jury, or from any other cause," resulting in the defendant not receiving a fair and impartial trial. A charge of misconduct of the judge or jury cannot be sustained as authorizing a new trial without at least a positive statement of fact, rather than an indefinite statement of belief. It should also be supported by affidavits of those by whom such facts could be established, even as is required in a civil proceeding.

Putting aside the statement in the bill of exceptions because of a doubt whether an incident of this kind outside of the trial properly belongs in such instrument, the argument of disqualification fails because of the indefiniteness of the statement submitted as a ground for a new trial. Although verified, it is not supported. The statement but expresses the belief upon information that the judge had urged the indictment of the respondent.

We are of the opinion that the respondents have been given a fair trial. Every opportunity was afforded them to establish their innocence of the serious charges preferred, and, as we think, were clearly proved.

The judgment disbarring the appellant Sessmer, and suspending the appellants Heyser and Kinsey, from the practice of law for a period of two years is affirmed.

Whole court sitting, except Justice Richardson, who was absent.