Ronald Ray FRANCIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 28, 1971.

Dixie R. Satterfield, Milliken & Milliken, Bowling Green, for appellant.

John B. Breckinridge, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

## VACATING JUDGMENT FOR FURTHER PROCEEDINGS

VANCE, Commissioner.

The appellant, Ronald Ray Francis, was convicted of the offense of uttering a forgery and sentenced to confinement in

the penitentiary for a period of five years and a day. KRS 434.130.

He alleges six grounds for reversal of the judgment. They are: (1) error of the trial court in admission of evidence of other crimes (2) error in admission of testimony of an alleged accomplice (3) error in admission of samples of appellant's handwriting (4) failure of the trial court to direct a verdict of acquittal (5) improper and prejudicial comments of a prospective juror (6) error in admission of testimony of a witness whose identification of appellant was allegedly tainted by reason of a pretrial lineup.

On or about December 1, 1969, a safe was stolen from the Bowling Green Country Club. It contained some checks bearing the legend "Bowling Green Country Club Employees' Fund" and the printed name of the American National Bank and Trust Company of Bowling Green, Kentucky. One of these checks payable to the order of Eddie Drane in the amount of $46.75 purportedly signed by Lenie Williams was cashed by the appellant on December 3, 1969 at the Reeves Food Market. The manager of the country club was the only person with authority to sign the check.

Appellant's first charge of error is that the trial court should have excluded all testimony that the check was taken from a safe which had been stolen from the Bowling Green Country Club shortly before it was cashed by appellant. His theory is that this evidence constituted proof of a crime against him other than the crime charged in the indictment.

■ The general rule is that the prosecution cannot prove against a defendant any crime not alleged in the indictment. Helton v. Commonwealth, Ky., 244 S.W.2d 762 (1951). The Helton case recognizes an exception to this rule. The exception is that all evidence which is pertinent to the issue and tends to prove the crime charged is admissible although it may also prove or tend to prove the commission of other crimes and to establish collateral facts.

Shepperd v. Commonwealth, Ky., 322 S.W.2d 115 (1959). While the prosecution is not privileged to show unconnected and isolated unlawful conduct that had no bearing whatsoever upon the crime under scrutiny, yet all the circumstances may be shown which have a relation to the particular violation of the law imputed, even if, in doing so, other offenses may be brought to light. Morgan v. Commonwealth, Ky., 310 S.W.2d 281 (1958). In the determination of the appellant's guilty knowledge or his intent to defraud, the fact that the check in his possession was stolen was a material and relevant factor.

David Kinslow, alias Jerry D. Johnson, testified that he rode in an automobile with appellant to the Reeves Market; that he saw the check in the car; that appellant went inside the market and he remained outside in the car while the check was cashed.

■ Appellant objected that the witness was an accomplice and that his testimony should have been excluded pursuant to RCr 9.62 which provides that a conviction cannot be had upon the uncorroborated testimony of an accomplice. The rule does not prohibit or exclude the testimony of an accomplice and no objection is raised that the accomplice was not sufficiently corroborated.

■ There was some evidence from which it could be inferred that Kinslow was a biased witness but this presented a question for the jury as to the weight to be given his testimony and did not render it inadmissible. Matherly v. Commonwealth, Ky., 436 S.W.2d 793 (1969).

While the appellant was confined in jail he wrote several notes to the jailer requesting money from his billfold. At the trial these notes were admitted in evidence to permit a comparison of his handwriting with the handwriting on the check.

■ The appellant contends that the comparison of handwriting was not proper under the circumstances of this case, citing

Howard v. Hunter, 5 Ky. Opinions 535 (1871); Pioneer Coal Co. v. Polly, 208 Ky. 548, 271 S.W. 592 at 594 (1925); and Stamper v. Commonwealth, 188 Ky. 538, 222 S.W. 1077 (1920). Although Howard v. Hunter, supra, holds that comparison of handwriting is not competent evidence to prove forgery, it was decided in 1871 prior to the enactment of KRS 422.120 which provides:

"When, in any civil or criminal action, there is a dispute as to the genuineness of the handwriting of a person, other handwritings of that person may be introduced for the purpose of comparison by witnesses with the writing in dispute. Such writings and the testimony of witnesses respecting them, may be submitted to the court or jury as evidence concerning the genuineness of the writing in dispute. * * *."

The statute permits the introduction of samples of handwriting for comparison purposes.

Pioneer Coal Company v. Polly, supra, and Stamper v. Commonwealth, supra, are not helpful to the appellant. Pioneer Coal Company v. Polly relates to the question of whether the handwriting offered for comparison purposes was genuine while the handwriting samples in this case were admitted by the appellant to be genuine. Stamper v. Commonwealth relates to the requirement of reasonable notice to a defendant before introduction of samples of handwriting for comparison purposes. The purpose of the notice is to afford a defendant the opportunity to question the genuineness of the samples and the notice requirement is not applicable where the samples are admitted to be genuine. Mattingly v. Commonwealth, 221 Ky. 360, 298 S.W. 950 (1927).

The appellant further contends that he was not warned that the handwriting samples might be used against him and that the introduction of the samples violated his constitutional right against self-incrimination. No authority is cited to support this argument.

■ The appellant was in no way compelled to write the notes and the notes are not testimonial in character. We see no reason why samples of handwriting should be placed in any different category than blood samples or finger prints insofar as their admissibility as evidence is concerned. Cf. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

The appellant's contention that he was entitled to a directed verdict is based upon the fact that the Commonwealth failed to offer any evidence that the American National Bank and Trust Company of Bowling Green was a duly authorized banking institution under the laws of Kentucky, a fact which was charged in the indictment.

Fain v. Commonwealth, 287 Ky. 507, 154 S.W.2d 553 (1941) is squarely in point and sustains appellant's contention that failure to prove the drawee bank was authorized to do business is fatal in forgery prosecutions. We have held, however, that the authority of a bank to engage in business may be proved by parol evidence. Carter v. Commonwealth, 311 Ky. 252, 223 S.W.2d 900 (1949). In *Carter*, evidence that one of the witnesses had been an assistant cashier of the bank for twenty years, that the appellant had done business with the bank and that the checks offered in evidence bore the printed legend "Member Federal Reserve System" was sufficient proof that the bank was authorized to do business.

In criminal prosecutions, when the question arises whether a company is incorporated, for instance, in a case of a prosecution for larceny of the property of an alleged corporation, or for a forgery of the bills of an alleged banking corporation, it is only necessary to show that the corporation exists de facto, and this may be proved by general reputation; in other words by proving by parol testimony that it is a corporation de facto, doing business as such. Carter v. Commonwealth, supra;

Morse v. Commonwealth, 129 Ky. 294, 111 S.W. 714 (1908); Hopkins v. Commonwealth, Ky., 328 S.W.2d 419 (1959).

In this case the check was introduced in evidence and it bore the printed legend "American National Bank and Trust Company, Bowling Green, Kentucky." The Bowling Green Country Club Employees' Fund had an account in the bank and the Reeves Market in Bowling Green readily accepted the check. When the issue of the authority of the bank to do business was raised the trial judge took judicial notice of the fact that the bank was a national bank operating in Bowling Green, Kentucky, with authority to do business there.[1]

 We think the parol evidence was sufficient to show the de facto existence and authority of the bank under the rule of Carter v. Commonwealth, supra. Moreover, we feel it is time to reexamine the holding in Fain v. Commonwealth, supra.

KRS 434.130 provides:

"(1) Any person who forges or counterfeits any writing in order to obtain fraudulently the possession of or to deprive another of any money or property, or to cause another to be injured in his estate or lawful rights, or any person who utters and publishes such an instrument as true, knowing it to be forged and counterfeited, shall be confined in the penitentiary for not less than two nor more than ten years.

"(2) Any person who forges or counterfeits a bank bill, or note or check or draft upon a bank, or the certificate of deposit of money of any bank or company authorized by the United States, any state of the United States or any foreign government, or any endorsement on such instruments; who erases or alters it, or any endorsement on it, or tenders in payment, utters, vends, exchanges, barters or demands to have exchanged for money any forged, altered or counterfeited bill,

note, draft, check or certificate of deposit or the endorsement on such an instrument, knowing it to be forged, counterfeited or altered, shall be confined in the penitentiary for not less than two nor more than ten years."

Under Section (1) of the statute the uttering of *any* forged writing with intent to deprive another of money or property is a felony. Why then should the uttering of a forged check be any less a felony if the drawee bank had no authority to engage in business? The statute does not require such a construction. The language of KRS 434.130(2) embraces a number of separate but related offenses, each clearly defined. When the various collateral offenses are deleted the statute relating to the uttering of a forged check reads as follows:

"Any person who * * * utters * * * any forged * * * check * * * knowing it to be forged * * * shall be confined in the penitentiary for not less than two nor more than ten years."

The authorization of a bank to engage in business is a necessary element of the offense only when the forged document is a certificate of deposit. No such authority is required to be shown in cases involving the forgery of a check and the contrary holding in Fain v. Commonwealth is overruled.

 In the course of voir dire examination, one of the prospective jurors, in answer to a question by appellant's counsel stated:

"If he was guilty I would give it to him."

This juror was excused for cause but the court refused to discharge the other jurors who had previously been accepted. The appellant cites no authority that this refusal was error. Even when a pros-

---

1. For discussion of propriety of taking judicial notice of the fact of incorporation of a bank, see 29 Am.Jur.2d, Evidence, Section 85.

pective juror has expressed his opinion that the accused was guilty of the offense charged within the hearing of other jurors, we have held it was unnecessary to discharge the other jurors who heard the remark. Penman v. Commonwealth, 141 Ky. 660, 133 S.W. 540 (1911). We are not persuaded that appellant was prejudiced by the juror's remark.

█ Appellant's last assertion of error is that the trial court improperly permitted identification of appellant by an eyewitness. The witness was the checker at Reeves Market who exchanged money for the forged check and she identified appellant as the man who presented the check to her.

The objection is based upon the ground that her identification in court was in some way tainted by the fact that she saw appellant in a police lineup prior to the trial when appellant was not represented by counsel.

In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) it was decided that an accused has a constitutional right to counsel at any police lineup and evidence of any such lineup conducted without the presence of counsel is inadmissible. It was further decided that in-court identification by one who viewed the lineup is likewise inadmissible unless it is shown that the in-court identification had an independent basis apart from having seen the accused at the lineup. The court stated:

> "We come now to the question whether the denial of Wade's motion to strike the courtroom identification by the bank witnesses at trial because of the absence of his counsel at the lineup required, as the Court of Appeals held, the grant of a new trial at which such evidence is to be excluded. We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the *in-court identifications were based upon observations of the suspect other than the lineup identification.* See

Murphy v. Waterfront Commission, 378 U.S. 52, 79, n. 18, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678. Where, as here, the admissibility of evidence of the lineup identification itself is not involved, a per se rule of exclusion of court room identification would be unjustified. See Nardone v. United States, 308 U.S. 338, 341 [60 S.Ct. 266, 267, 84 L.Ed. 307]. A rule limited solely to the exclusion of testimony concerning identification at the lineup itself, without regard to admissibility of the courtroom identification, would render the right to counsel an empty one. *The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference.* We have already noted that the lineup identification will have that effect. The State may then rest upon the witnesses' unequivocal courtroom identification, and not mention the pretrial identification as part of the State's case at trial. Counsel is then in the predicament in which Wade's counsel found himself—realizing that possible unfairness at the lineup may be the sole means of attack upon the unequivocal courtroom identification, and having to probe in the dark in an attempt to discover and reveal unfairness, while bolstering the government witness' courtroom identification by bringing out and dwelling upon his prior identification. Since counsel's presence at the lineup would equip him to attack not only the lineup identification but the courtroom identification as well, limiting the impact of violation of the right to counsel to exclusion of evidence only of identification at the lineup itself disregards a critical element of that right.

> "We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488 [83 S.Ct. 407, 417, 9 L.Ed.2d 441], '"'[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by

exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Maguire, Evidence of Guilt 221 (1959).' See also Hoffa v. United States, 385 U.S. 293, 309 [87 S.Ct. 408, 17 L.Ed.2d 374]. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

In United States v. Wade, supra, the accused was not granted a new trial but the judgment was vacated and the case remanded to the state court for a determination of whether the in-court identification was tainted.

In the present case counsel for the appellant repeatedly requested a hearing out of the presence of the jury at which evidence might be heard by the trial judge relating to the circumstances of a police lineup and seeking a determination of whether the police lineup influenced or tainted the in-court identification. The trial court erred in denying appellant's request. We are not disposed, however, to reverse the judgment and grant a new trial but will follow the procedure adopted in United States v. Wade.

Under the authority of Hohnke v. Commonwealth, Ky., 451 S.W.2d 162 (1970) the judgment is vacated and the case is remanded to the circuit court for a determination of the question of whether the in-court identification had a substantial independent basis or was tainted by the pretrial lineup.

If there was a substantial independent basis for the in-court identification, the trial court will reinstate the judgment, otherwise the appellant shall be granted a new trial.

All concur.