# Sparks v. Bowman.

(Decided Dec. 8, 1936.)

WOODS, STEWART & NICKELL and CHARLES PRATER for appellant.

W. D. O'NEAL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Sam J. Sparks is appealing from a judgment recovered against him by S. A. Bowman for $1,250.

In substance the undisputed facts are that appellee is engaged in the practice of law at Potosi, Mo., and appellant is engaged in the same profession at Ashland, Ky. Some years ago A. H. Savage, a resident of Ashland, died testate and left surviving a widow, Mrs. Fannie Savage and a daughter, Mary M. McQueen, who with

her husband resided at Potosi, Mo.  Mr. Savage left a considerable estate, including a number of pieces of realty in Ashland.  As appears from the record, some contention arose between the widow and daughter concerning the construction of the will and the administration and settlement of the estate.  The McQueens consulted with S. A. Bowman who at their instance made a trip to Ashland to ascertain facts concerning the will and the estate.  After examining the will and making inquiries concerning the character and value of the estate, he went to the office of appellant and had some informal talk with him about the estate and the law relating to the will.  After appellee returned to Missouri, there was some correspondence between him and appellant, and, without going into detail, it is shown that appellant and appellee were jointly employed to represent Mrs. McQueen in litigation and matters connected with the estate of her father.  The contract of employment was not reduced to writing, and no agreement or understanding was reached concerning the amount of the fees to be paid.

There was litigation involving a construction of the will and distribution and settlement of the estate which was terminated by an agreement settling all matters in dispute between the parties.  In this litigation the widow was represented by J. B. Adamson and other counsel, and the agreement settling the litigation provided that attorneys' fees to the amount of $5,000 should be paid to the attorneys for the respective parties, $2,500 to be paid to Adamson and his associates, and a like sum to Sparks and his associate counsel.  It is conclusively shown, and in fact not denied, that it was agreed and understood between appellant and appellee that they were to share equally in fees paid by Mrs. McQueen for their services.

Following this agreement, there was an extensive correspondence between appellant and appellee concerning the collection of their fees, and there had been some proposition that they take a conveyance of real estate from the McQueens in satisfaction of their fees, but appellee consistently refused to entertain any such proposition and insisted that his portion be paid in cash.

On August 6, 1932, Mrs. McQueen and her husband and Mrs. Savage executed and delivered to J. B. Adam-

son and Sam Sparks a deed for an undivided one-half interest in two lots situated on Winchester avenue in Ashland, W. C. Richardson being the owner of the other one-half interest therein. The recited consideration was $5,000, which was in full satisfaction and payment of all attorneys' fees due by the first parties to second parties and the further consideration of $500 due and payable to Mrs. McQueen 36 months after the date of the deed.

On October 4, 1932, Bowman instituted this action, alleging in substance in his petition, as amended, that the $2,500 fee which the McQueens contracted and agreed to pay him and appellant, and which was to be equally divided between them, was paid and settled by the aforementioned conveyance to appellant and Adamson; that the $5,000 mentioned in the deed represented the fee of Adamson in the sum of $2,500 and the fee of $1,250 each due appellant and appellee; that appellant had not accounted to him for the $1,250 due him or any part thereof.

In his amended petition he alleged that appellant had conveyed to another his interest in the Winchester avenue property in exchange for lands which he caused to be conveyed to his daughter. He attacked this and other conveyances set up in the pleading as fraudulent and made for the purpose of concealing his property and putting same beyond the reach of his creditors, and he made parties to these conveyances parties defendant and asked that the conveyances be set aside and he be adjudged a lien upon the property to satisfy his debt, interest, and costs.

In his original answer appellant merely traversed the allegations of the original petition, and by an amended answer alleged that Bowman refused to join in the purchase of the Winchester avenue property from the McQueens; that the purchase of the property was an independent deal with the McQueens, and it was understood between the parties that appellant would pay appellee his fee in the event he could sell the property purchased for a price over and above his fee and the extra money he had paid as part of the consideration.

In a second amended answer he denied that he assumed or agreed to pay appellee any sum or amount for the McQueens under the deed for the Winchester avenue

property, and further alleged that, simultaneously with the execution and delivery of that deed, he and Adamson entered into a sale agreement with the McQueens and Mrs. Savage, wherein it was recited that the parties of the first part were indebted to the parties of the second part and others associated with them in the sum of $5,000 for attorneys' fees, of which sum $2,500 was due Sparks and Bowman in equal shares, and $2,500 due Adamson and others; and, in consideration of such sums and the further sum of $500 to be paid as recited in the deed, the property mentioned in the deed had been conveyed to Sparks and Adamson; that it was further provided in the agreement that Adamson and Sparks would pay to Bowman and to counsel associated with Adamson the sum of $2,500, provided, however, that if, because of defect in title or decline in the value of the real estate or any other cause beyond the control of Adamson and Sparks, enough could not be realized from the property at a fair sale to pay the fees of Bowman and attorneys associated with Adamson and leave enough to pay the second parties their fee and the additional sum of $500, then Adamson and Sparks should deduct from the net sale price $2,500 due them as fees and the additional $500 and the remainder, if any, would be applied to the payment of Bowman and others and that the first party should be responsible to Bowman and others interested in the attorneys' fees for whatever deficit there might be; that second parties (Sparks & Adamson) did not assume any indebtedness of the party of the first part for any purpose whatsoever except as above indicated.

After filing of the amended petition attacking certain conveyances, appellant entered a motion to transfer the cause to equity and that the evidence be heard orally by the court. It was ordered that all matters of equitable nature be held in abeyance without prejudice to the rights of parties until issues of law were tried and determined.

Trial before a jury resulted in a verdict for plaintiff in the amount indicated in the judgment.

As grounds for reversal it is argued in substance that the court erred in refusing to instruct the jury to find for appellant, that the instructions given are erroneous because not based on pleadings or supported by evidence, that there was no evidence to support the

verdict, and that the court erred in not granting a new trial on the ground of newly discovered evidence.

The evidence discloses that appellant was in active charge of all litigation and agreements on the part of and with the McQueens; that before the Winchester avenue property had been conveyed to him and Adamson they had formed a partnership for the practice of law, but apparently this did not include matters connected with the Savage estate. Before this deed was made, Bowman and the McQueens had agreed upon a fee of $3,000 to be equally divided between appellant and appellee; however, in a letter concerning the agreement reached whereby the attorneys for the respective parties were to receive $5,000 to be divided as above indicated, appellant told appellee that he feared the court would only allow attorneys' fees of $3,000, and indicated that this would have been divided equally between the attorneys for the McQueens and the attorneys for Mrs. Savage, and that he thought the best thing was to enter into an agreement whereby he and appellee would receive $2,500 rather than the $1,500. It is apparent from the evidence that appellant was trying to take care of Adamson in the matter of fees. Appellant filed with his amended answer and introduced in evidence the contract which he alleged was made contemporaneous with the execution of the deed and which was signed by the McQueens and Mrs. Savage as parties of the first part and by Adamson & Sparks by S. J. Sparks, parties of the second part. Appellee testified that he was not furnished a copy of this agreement and had no notice of it. Appellant testified that he mailed appellee a copy of the contract immediately after the transaction and later, when appellant asked concerning it, mailed him another copy. Correspondence between appellant and appellee covering a period of over 3 years is found in the record. On June 26, 1930, appellee wrote appellant that the McQueens had proposed to the attorneys that they take title to the one-half undivided interest in the Winchester avenue property at the price of $5,500, paying $500 in cash over and above the fees, but that he did not accept the proposition nor would he assent to any agreement to reduce fees. In reply appellant wrote that he did not want any more property, but that, if the McQueens would convey to them the property mentioned for $5,000, the amount of the attorneys' fees, he thought

they would do well to take it; that the property had returned a net income of more than 5 per cent., on a valuation of $14,000 over a period of 20 years, but that he wanted cash instead of property. He further stated that he had the McQueens sign up to pay them jointly $2,500 and to pay Adamson and those he employed in the case $2,500. On August 30, 1930, appellant wrote appellee that the McQueens had been doing some trading and he saw that the property was going, "so we got their interest in the brick house tied up for fees— that is on our hands and we will make settlement with you just as soon as we can make a turn on the property. I am in a hurry and have merely to assure you that I saved enough for fees but can't get the money on it until I can handle the property but it is secured any way."

On September 19, 1930, appellant wrote appellee in part as follows:

"I am about to do what I have been hesitating for some time to do but here goes and I think the only safe thing to do is burn this letter as soon as you have read it.

"Here are the details of the McQueen doings while in Ashland; he began making very low offers to sell the property as soon as he came, but no one would buy and pay cash and cash was what he wanted. I saw he was going to get rid of the prop- erty and we would not be in a very good shape for fees. Adamson and I took the interest in the brick property at $5500 with the understanding we would settle with you out of this property leaving us to owe him at the time $500."

He then detailed in this letter how the McQueens had disposed of other properties, two pieces of which had been purchased by appellant and Adamson on time.

Appellee continued to write appellant for information as to when he might expect his part of the fee and also making inquiry concerning the terms of the con- tract between appellant, Adamson, and the McQueens.

On June 24, 1930, appellant wrote appellee stating "that when the brick properties were purchased by Mr. Adamson and myself from Mr. McQueen, we took them at $5,500. The deed recites that we are to take care of

all attorney fees out of the proceeds of the property and pay McQueen $500. We made subsequent deal with McQueen in which we satisfied the $500, and leaves nothing coming to them on the property, but out of the proceeds of this property $1,250 is due you. We have offered to sell our interest in the property for $2,000 but cannot realize that out of it.''

In reply appellee said in part:

''As to the matter regarding our fees in the case, I have waited a long time now for my part and I am not willing to make any discount on the $1,250 due me, but if you and Mr. Adamson should sell your interest in that property for $2,000 I am to have the $1,250 which is due me.''

In reply to this letter, appellant made no denial that $1,250 was due appellee out of the proceeds of the sale of the property, nor in this or in any other letter concerning the transaction did he ever make reference to any contemporaneous contract or refer to any inclosure with the letter.

The first and second grounds argued for reversal may be considered together, since they are both grounded on the theory that the evidence did not sustain the cause of action stated in appellee's pleading and that the instructions given were not based upon pleading supported by evidence.

Instruction No. 1 authorized the jury to find for appellee the sum of $1,250 if they believed from the evidence that the property described in the deed from Mary McQueen and others to Sparks and Adamson was conveyed in full settlement and satisfaction of the agreed attorneys' fees and should further believe that appellant represented to appellee that he would pay to him out of the proceeds of the sale on the real estate or otherwise his one-half of the fee amounting to $1,250 and that appellee accepted and relied upon such representations, if they were so made; but unless they so believed, they would find for defendant.

In a second instruction the jury was authorized to find for appellant if they believed from the evidence that the contemporaneous contract referred to in the pleading and evidence was executed as alleged in the pleading and evidence and should further find and be-

lieve that appellee was furnished with a copy of such contemporaneous contract or was advised of the contents thereof and acquiesced therein. Without further detailing the pleading or evidence, it is obvious, and we are constrained to hold, that the instructions given were authorized by pleading and proof and fairly submitted the issues; and, this being true, it follows that the court did not err in this particular nor in refusing to peremptorily instruct the jury to find for appellant.

Concerning the second ground, it is apparent from what we have already recited that the contention of appellee is supported by a decisive weight of evidence. In our recital we have picked outstanding portions of the evidence, and there is much that has not been recited pointing the same way and supplementing and supporting that which has been set out; but, even if the preponderance of evidence did not favor the cause of appellee, the jury, whose province it was to determine the credibility of the witnesses and the weight to be given their evidence, determined the matter in his favor, and under long-established rules their verdict cannot be disturbed, where, as in this instance, it finds ample support in the evidence and clearly is not flagrantly or at all against the evidence.

One of the grounds urged in the motion for new trial was newly discovered evidence. This newly discovered evidence consisted of a carbon copy of a letter purporting to have been written to appellee by appellant on July 2, 1931. This letter, omitting formal parts, reads:

"I have your letter as to the contract concerning the payment of our fees from the brick property in Ashland. I mailed you one of the original copies at the time I wrote you that Adamson and I had taken a deed to the property. I am also informed in the office that a typed copy had been sent you. I do not understand why you have not received one of the copies sent. However, I will seal and mail a copy with this letter myself. If you write for another, I shall have one registered to you.

"Property continues to decline in value here and I see no signs that things will be better any way soon. You were wise to decline to join us in

the purchase of the property here as you will have plenty there to collect your fee from McQueens.''

This ground is supported by the affidavits of appellant and others. In appellant's affidavit he sets forth that there are a number of files concerning matters connected with the Savage estate and that his secretary who was his daughter had placed this carbon copy in a wrong file; that because of his physical condition he was unable to make proper examination for it, but that after the trial another person at his instance made a search and located it. In the first place, it is to be doubted if appellant used required diligence to discover such evidence. If he had used the same diligence before the trial came to a close that he used afterward it would have been located. In the second place it is an established rule that a new trial will not be granted on the ground of newly discovered evidence, unless the evidence is of such character and nature as to render a different result reasonably certain. Provident Life & Accident Ins. Co. v. Watkins, 256 Ky. 645, 76 S. W. (2d) 889; Morgan v. Mosley, 262 Ky. 658, 90 S. W. (2d) 1013; Vogt v. H. H. Newmark Co., 244 Ky. 91, 50 S. W. (2d) 54.

In view of the letters from which we have quoted, one of which was apparently the first letter written concerning the deed and its terms and in which no mention was made of a contemporaneous contract or any inclosure of a deed or other contract, it is quite apparent that the alleged newly discovered evidence is not of so permanent and unerring character as to preponderate greatly or to have such decisive influence upon the evidence as to be overturned by it as would render a different verdict reasonably certain.

Judgment affirmed.