## Sessmer v. Commonwealth.

(Decided March 25, 1938.)

DAVID SESSMER, EDWARD C. O'REAR and ALLEN PREWITT for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In a proceeding brought by the commonwealth for that purpose, David Sessmer, an attorney, was disbarred, and on appeal the judgment was affirmed. Sessmer v. Commonwealth, 268 Ky. 127, 103 S. W. (2d) 647. After the judgment of disbarment was rendered, Sessmer brought an independent action for a new trial. A demurrer was sustained to the petition, and the petition was dismissed. Sessmer appeals.

It is first insisted that Judge Farnsley, who heard the case, should have vacated the bench. The basis of this contention is the affidavit of appellant that Judge Farnsley, who was about to hear the case, presided at the former trial, heard all the evidence, and had a fixed opinion that appellant was guilty as charged; and, further, that Judge Farnsley, while the disbarment action was pending, appeared before the grand jury of Jefferson county and urged them to indict appellant because of the charges and evidence in the disbarment proceeding. It is only where facts are stated showing bias or

prejudice that the trial judge is required to vacate the bench. In the very nature of things a prior decision, even though it be erroneous, does not disqualify a judge from presiding. If it did, it would be practically impossible for a judge to preside throughout the entire trial, or to preside on a second trial of the same cause. It is admitted in the affidavit that Judge Farnsley heard all the evidence, and it hardly can be said that a fixed opinion, based on the evidence, indicates bias or prejudice. But it is said that Judge Farnsley's appearance before the grand jury disqualified him from sitting. The same contention was also made on the original appeal and held without merit.

The further point is made that the court, after sustaining the demurrer, dismissed the petition, without giving appellant an opportunity to amend. It does not appear that appellant asked for time to amend, and, in the absence of such request, the failure to give time cannot be regarded as prejudicial error.

We come next to the sufficiency of the petition. It sets forth the charges, appellant's defense, the names of the witnesses, and the evidence heard on each charge, and alleges that the judgment of disbarment was based upon the testimony of Dr. E. P. Smith, his attorney, C. C. Cuzzort, and his office girl, Mitzi Schneider, and that the charges and testimony against appellant were each of them false and known to be false by each of said named persons, and that during the week of May 21, 1936, he first discovered the evidence thereinafter set out showing that said Smith and Cuzzort procured said false and fraudulent testimony to be introduced by the commonwealth. We then have the following: On January 11, 1936, Jerome Schneider sued Mitzi Schneider for divorce. While the divorce was pending, Mitzi Schneider, now Mitzi Howell, wrote to Gordon Kinsey, her attorney, a letter in which she discussed his fee, and stated that it would be paid by Jerome Schneider. On February 10, 1936, she wrote another letter to Gordon Kinsey in which she expressed disappointment that Dr. Smith had either misplaced or destroyed the letters she had written him, and asking Kinsey if he did not think it best for her to write Smith immediately and date the letters back, one in September and one in October. She also asked Kinsey to tell her about what to say, adding that she would write two letters to Smith, who would give them to Kinsey. She further said that

she could make the evidence plenty strong against herself. The letter also contained the following:

> "It really doesn't make much difference to me now, as I am living with this man as his wife, and every one up here knows that I am married to him, and I don't care what they know back in Louisville."

There was also talk about her employing another attorney to look after the case. Between February 10, and March 14, 1936, Mitzi Schneider wrote Kinsey another letter, stating that she was mailing him as per his request "the two letters which are Dr. Smith's," and had dated one October 25th and the other November 18th. She also asked Kinsey to hurry the matter up as Jerome was going to leave in about ten days or two weeks and was paying for the divorce. On March 14, 1936, Mitzi Schneider wrote another letter to Kinsey saying,

> "Just mailed two letters to Dr. Smith as you requested me to. You say in your letter that those two letters may not be sufficient proof, and advised me about getting a couple of witnesses up here to testify. That is absolutely impossible for me to do this, and really I am very much surprised, as you told me in your other letter that with the letters the Commissioner said it would be sufficient proof, then in your last letter in which you also returned the letters requesting me to mail direct to Dr. Smith, you say that may be it will not be proof enough."

She then went on to say that she could not understand the matter, and spoke of employing another attorney. On March 15, 1936, she again wrote to Kinsey saying that she had wired him $10, and had also sent Jerome the extra amount of $20, so that Jerome would pay him as soon as the two got together. She added that she was certainly happy to learn that with Cuzzort's deposition they had sufficient proof, and expressed the hope that Kinsey would get the divorce for her as soon as possible. The petition then alleges that the two fictitious letters, one dated October 25, and the other November 18, 1935, were written by Mitzi Schneider in March, 1936, and predated by her, and that on or about March 14, 1936, instead of October or November, 1935, she mailed the letters to Dr. E. P. Smith, and that on April 1, 1936, said Dr. Smith introduced and filed said

false letters with his deposition in the divorce case as having been received by him in October and November, 1935. In the letter of October 25, 1935, to Dr. Smith, Mitzi Schneider stated that she did not love Jerome, and did not want to live with him any longer. Also that she had met the man that she really loved, and was then living with him as his wife. She also said that if Jerome wanted to divorce her, why he could, and if he did not, it was all right with her. In the letter to Dr. Smith dated November 18, 1935, and written in March, 1936, she thanked him for his nice letter and said,

> "Well, I guess everybody in Louisville is talking about me, but I don't care. I know I have hurt Jerome terribly, but after all, I am looking out for my own welfare and happiness. If he wants to get sore about it, why he can. After all, the only thing he can do is to divorce me, so if he wants to, well that is all right. I don't care what he does, and maybe he will be better off without me," etc.

The petition then alleges that some time between February 7, 1936, and April 1, 1936, Mitzi Schneider wrote Gordon Kinsey another letter in which she stated, in substance, that she would prepare and send Dr. Smith the two fictitious letters, and he need have no scruples about introducing them as genuine letters. "She said she had lied for him, the said Smith, in the Sessmer Case, referring to said disbarment proceeding, and that Dr. Smith could lie for her in her case." Pursuant to the conspiracy in said letters to obtain said divorce upon the said false testimony, the said Dr. E. P. Smith, the said C. C. Cuzzort, and the said Jerome Schneider all testified, and upon such false and fraudulent record Jerome Schneider was granted a divorce from Mitzi Schneider. The originals of all the letters are in the possession of Gordon Kinsey, who told appellant that he had the letters. All the said newly discovered evidence was material, and appellant did not know and could not by the exercise of reasonable diligence have discovered the existence of the said letters or any of them before the original hearing. The petition also contains the allegation that after the witness Gordon Jones had left the courthouse, Dr. E. P. Smith and C. C. Cuzzort, her attorney, tried to persuade him to change his testimony, in support of which was filed the affidavit of Gordon Jones. There is the further allegation that appellant did not know and by the exercise of reason-

able diligence could not have discovered the said evidence prior to October 16, 1936.

It will be seen from the foregoing statement that the proceeding is one under sections 518 and 344, Civil Code of Practice, and its purpose is to obtain a new trial on the ground of newly discovered evidence. The applicable principles of law are in brief as follows: The granting of a new trial for newly discovered evidence rests largely within the sound discretion of the trial court. Allender Co. v. Browning's Adm'x, 242 Ky. 273, 46 S. W. (2d) 116. A new trial will not be granted for newly discovered evidence unless the evidence is of such decisive character as to render a different result reasonably certain. Morgan v. Mosely, 262 Ky. 658, 90 S. W. (2d) 1013; Sparks v. Bowman, 266 Ky. 499, 99 S. W. (2d) 449. Newly discovered evidence, which tends only to discredit or impeach a witness or party, will not authorize a new trial. Ashley v. Harris, 240 Ky. 815, 43 S. W. (2d) 58. Newly discovered evidence on a question not involved in the issue on which the case was tried will not justify a new trial. Eccles v. Shackleford, 1 Litt. 35. To justify a new trial, the newly discovered evidence must be both competent and material. Isgrig v. Jacoby, 199 Ky. 744, 251 S. W. 945. The newly discovered evidence relied on consists of alleged letters of the witness, Mitzi Schneider, or Howell, tending to show collusion on the part of herself and husband in obtaining the divorce, and disclosing the fact that the letters which she wrote saying that she was then living with another man were antedated, and were filed by Dr. Smith as of their true date. In short, it is sought to show that, because of her, her husband's and Dr. Smith's conduct in the divorce case, she, her husband, and Dr. Smith are unworthy of belief. To grant a new trial on account of such evidence would go counter to all the principles regulating the subject. The evidence is not of a decisive character. It does not relate to any issue in the case. Its only effect is to discredit Mitzi Schneider, Jerome Schneider, and Dr. Smith, and in that respect is merely cumulative. Aside from all this, the evidence would not have been admissible if it had been offered on the original trial. Under our Code, a witness may be impeached by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief, but not by evidence of particular wrongful acts, except that it may be shown

by the examination of a witness or record of a judgment that he has been convicted of a felony, section 597, Civil Code of Practice, and with one exception the evidence relied on tends only to show particular wrongful acts not connected with the case on trial. The only exception is that, in a letter alleged to have been written to Gordon Kinsey, Mitzi Schneider said ''she had lied for him, the said Smith, in the Sessmer case, referring to said disbarment proceedings, and that Dr. Smith could lie for her in her case.'' Unlike other instances relied on, no copy of the letter containing the above statement is filed. Unless the original letter should be introduced, we would simply have oral evidence that Kinsey had received a letter containing the statement, accompanied by a denial on the other side. But, conceding that the evidence will be sufficient to show that the witness made the statement, we concur with the trial judge that, if all her evidence should be excluded on the ground that she is unworthy of belief, there remains sufficient evidence to sustain the original judgment. It follows that the alleged newly discovered evidence was not sufficient to authorize a new trial, and that the demurrer to the petition was properly sustained.

Judgment affirmed.